Terry BARFIELD, et al., Plaintiffs,

v.

MADISON COUNTY, MISSISSIPPI, et al., Defendants/Third–Party Plaintiffs,

v.

Jessie HOPKINS, in his individual capacity, Third Party Defendant.

No. CIV.A.3:96–CV–666BS.

United States District Court, S.D. Mississippi, Jackson Division.

Nov. 20, 1997.

Steven Mark Wann, Mary Marvel Fyke, Maxey, Wann & Begley, Jackson, MS, John G. Jones, Jackson, MS, for plaintiffs.

Gary E. Friedman, Wendy Moore Shelton, Phelps Dunbar, Jackson, MS, for defendants, third-party plaintiffs, counter-defendants.

William E. Spell, Clinton, MS, for Third-party defendant, counter-claimant.

## OPINION AND ORDER

BARBOUR, District Judge.

This cause is before the Court on the following motions: (1) Motion for Partial Summary Judgment filed by the Defendants Madison County, Mississippi, Karl Banks, J.L. McCullough, David Richardson, Louise Spivey, Luther Waldrop and Jessie Hopkins in His Official Capacity as Sheriff of Madison County, Mississippi (collectively "Madison County" or "the Madison County Defendants"); (2) Motion for Partial Summary Judgment filed by Third Party Defendant Jessie Hopkins;[1] (3) Motion for Partial Summary Judgment filed by all Plaintiffs;

---

1. For ease of reference and to avoid any further confusion in this case, the Court will refer to Sheriff Jessie Hopkins in his official capacity as "the sheriff" and in his individual capacity as "Hopkins."

and (4) Motion to Strike Testimony Asserting Sheriff Jessie Hopkins, in His Official Capacity, Was Employer of Plaintiffs. Having considered the Motions, Responses, Rebuttals, all attachments to each, and supporting and opposing memoranda, the Court finds as follows: (1) the Motion for Partial Summary Judgment filed by the Madison County Defendants should be granted in part and denied in part; (2) the Motion for Partial Summary Judgment filed by Third Party Defendant Jessie Hopkins should be denied; (3) the Motion for Partial Summary Judgment filed by the Plaintiffs should be denied; and (4) the Motion to Strike filed by Third Party Defendant Jessie Hopkins should be denied.

### I. Factual Background and Procedural History

The Plaintiffs, who are current or former employees of the Madison County Sheriff's Department, claim that they are owed unpaid overtime compensation from September 6, 1993,[2] through March 1, 1996. According to Madison County, in December, 1995, or January, 1996, Cheryl Hopkins, the wife of Jessie Hopkins, who was prosecuting her own overtime compensation claim against Madison County, contacted Charla Jordan with the United States Department of Labor ("DOL") concerning claims for unpaid overtime compensation for Sheriff's Department employees.[3] After investigating the claim, the DOL concluded that the employees in question were entitled to total unpaid wages of $341,341.61. See Exhibit K to Defendants' Motion.[4] Madison County apparently does not dispute that some overtime hours were

worked by some, if not all, of the Plaintiffs in this action. This dispute concerns how many hours were worked, the rate of pay at which such employees should be compensated and who should be liable for this compensation. The Madison County Defendants characterize this suit as "an attempt by the Sheriff to have the Court force the County to retroactively increase his budgets for 1993 through 1996, thereby circumventing the Sheriff's duty pursuant to Miss.Code Ann. § 19–25–13 to stay within his budget." Defendants' Memorandum in Support of Motion at 3.

The parties do not dispute that the Sheriff did not submit any requests for payment of overtime for his employees before April, 1996, at which time he submitted overtime for March and April, 1996. According to Madison County, other departments submitted overtime requests during the relevant time period, and the amounts requested were either paid or compensatory time was given to the employee. The Sheriff asserts that he was told by the Board of Supervisors and the Chancery Clerk not to report the actual hours worked by Sheriff's Department employees. Hopkins' Dep. at 100, 192–94, attached as Exhibit C to Plaintiffs' Motion; Hopkins' Dep. at 12, attached as Exhibit D to Plaintiffs' Motion.[5] Undersheriff Shelby Burnside ("Burnside") testified that he fills out the time sheets which are provided to the Sheriff's Department by Madison County. Burnside Dep. at 21, attached as Exhibit O to Plaintiffs' Motion. Burnside testified that Steve Duncan, the Chancery Clerk, who is responsible for the payroll for Madison

---

**2.** The Madison County Defendants assert that the beginning date is September 1, 1993. However, the Plaintiffs retained a Certified Public Accountant, Charles R. Lindsay ("Lindsay"), and instructed him to ascertain the amount of overtime worked by them between September 6, 1993, and March 1, 1996. See Lindsay Affidavit at 1, ¶ 2, and attachments thereto, attached as Exhibit M to the Plaintiffs' Motion for Partial Summary Judgment. Although the Madison County Defendants use September 1, 1993, as the date claimed by the Plaintiffs, the Court will use the September 6, 1993, date as determined by the Plaintiffs' expert.

**3.** Cheryl Hopkins, at all relevant times, worked for the Madison County Emergency Management Agency. In a letter dated January 19, 1996, Charla Jordan stated that the DOL had computed

Cheryl Hopkins' back pay claim for overtime hours in the amount of $10,687.42. January 19, 1996, Jordan Letter, attached as Exhibit H to Defendants' Motion for Partial Summary Judgment. This letter does not mention any claim by Cheryl Hopkins' on behalf of Sheriff's Department employees.

**4.** This computation was based upon a 2–year period from February 5, 1994, to January 27, 1996, and the calculation of wages was based upon 1½ each employee's regular rate of pay for all hours worked over 40 in a work week.

**5.** The Sheriff has been deposed twice in this matter, the first time pursuant to a notice issued by the Defendants and the second time pursuant to a notice by the Plaintiffs.

County, told him not to record the actual hours that the employees were working. *Id.* at 22. Rather, Burnside asserts that he was instructed to determine the number of days each employee worked during the month and multiply that number by eight. *Id.* Burnside also testified that the Sheriff was informed by David Richardson, a member of the Board of Supervisors and a Defendant in this case, not to record how many hours the Sheriff's Department employees were working. *Id.* Madison County disputes these allegations and asserts that Hopkins is individually liable for all of the overtime pay which he failed to request for his employees in a timely manner.

The Plaintiffs filed this action on September 5, 1996, against Madison County and the individual members of the Board of Supervisors, alleging that Madison County violated the Fair Labor Standards Act ("FLSA") by failing to pay them overtime. The Plaintiffs later amended their Complaint to allege, *inter alia:* (1) claims pursuant to 42 U.S.C. § 1983 for deprivation of property rights in wages for work performed; (2) claims for violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; and (3) claims against the Sheriff, in his official capacity.[6] All of the parties involved in this matter have now moved for partial summary judgment, and the issues raised in those Motions are ripe for decision.

## II. *Summary Judgment Standard*

Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish

the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State Univ.,* 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Indus.,* 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–2553. The movant need not, however, support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–324, 106 S.Ct. at 2552–2553. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. *National Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

## III. *Analysis*

### A. *Is Sheriff Jessie Hopkins the Employer or a Joint Employer of the Plaintiffs Under the FLSA?*

■ Madison County asserts that Hopkins, individually, is the sole employer of the

6. *Madison County vigorously protested the addition of the Sheriff, in his official capacity, as a* Defendant in this matter.

Plaintiffs pursuant to the definition of "employer" set forth in the FLSA. Alternatively, Madison County asserts that Hopkins is at least a joint employer, along with Madison County, of the Plaintiffs in this action.

The Plaintiffs assert that the Sheriff, in his individual capacity, is not the Plaintiffs' employer. According to the Plaintiffs, the Sheriff is their employer in his official capacity only [7] and may not be held liable individually for their claims for overtime pursuant to the FLSA.

Hopkins, in his individual capacity, makes an interesting argument on this issue. According to Hopkins, the Madison County Defendants, in response to Request's for Admissions, have repeatedly asserted that the Sheriff, in his official capacity, is not the employer of the Plaintiffs. Hopkins therefore claims that, having made that admission, the Madison County Defendants are "estopped from asserting otherwise." Memorandum of Jessie Hopkins in Opposition to Defendants' Motion for Partial Summary Judgment at 2. Thus, according to Hopkins, "Jessie Hopkins, individually, cannot be the employer or joint employer of Plaintiffs unless he is first and simultaneously the employer or joint employer in his official capacity." *Id.*[8]

■ The question of Hopkins' status as an employer of the Plaintiffs is a question of federal law which is governed by the specific provisions of the FLSA.[9] 29 U.S.C. § 203(d) defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency The United States Court of Appeals for the public agency...." The United States Court of Appeals for the

Fifth Circuit has addressed this issue in *Lee v. Coahoma County,* 937 F.2d 220 (5th Cir. 1991), *amended in part,* 37 F.3d 1068 (1993).

An employer under the FLSA includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The term employer includes individuals with managerial responsibilities and "substantial control over the terms and conditions of the [employee's] work...." *Falk v. Brennan,* 414 U.S. 190, 194, 94 S.Ct. 427, 430, 38 L.Ed.2d 406 (1973). If an *individual* with managerial responsibilities is deemed an employer under the FLSA, the individual *may be* jointly and severally liable for damages resulting from the failure to comply with the FLSA. *See Donovan v. Grim Hotel, Inc.,* 747 F.2d 966 (5th Cir.[1984] ), *cert. denied,* 471 U.S. 1124, 105 S.Ct. 2654, 86 L.Ed.2d 272 (1985).

Sheriff Bonner clearly falls within the class of managerial personnel considered employers by the FLSA. Mississippi law allows a county sheriff operational control of the sheriff's department. Miss.Code Ann. § 19–25–13 (Supp.1989). A sheriff has the power to "appoint one or more deputies ..., remove them at pleasure, and to fix their compensation, subject to the budget of the sheriff's office...." Miss.Code Ann. § 19–25–19. The district court's opinion makes no finding concerning Sheriff's Bonner's status as an employer under the FLSA. However, the absence of such findings does not affect the district court's discretionary refusal to award liquidated damages.

---

7. As all of the parties have recognized, a suit against the Sheriff in his official capacity is the same as a suit against Madison County. *See Bennett v. Pippin,* 74 F.3d 578, 584 (5th Cir.) (concluding that a suit against a county official in his official capacity is a suit against the county, and the county is liable for any resulting judgment), *cert. denied,* —— U.S. ——, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996).

8. Hopkins also asserts that he is entitled to qualified immunity from individual liability for any alleged violations of the FLSA. Hopkins has not cited, and the Court has not found, any cases recognizing qualified immunity as a defense to a

claim for violation of the FLSA. Absent any authority to support this argument, the Court concludes that Hopkins is not entitled to qualified immunity.

9. The Court need not address Hopkins' argument that Madison County is bound by the admission that the Sheriff, in his official capacity, was not the employer of the Plaintiffs. Hopkins' employer status, or lack thereof, is a legal question for this Court to decide and is not a matter for the parties to determine through admissions or otherwise.

*Id.* at 226 (emphasis added).[10]

The Plaintiffs and Hopkins assert that the *Lee* court made no finding with regard to the liability of the sheriff individually. They further assert that the Fifth Circuit is clearly referring to the sheriff in his official capacity[11] due to the citations to the Mississippi Code. This Court cannot agree with this argument. The cases relied upon by the *Lee* court, especially *Donovan*, 747 F.2d 966, clearly support the imposition of individual liability upon the sheriff. If, as the Plaintiffs and Hopkins claim, the sheriff could only be held liable in his official capacity, there would have been no need for the *Lee* court to address the status of the sheriff as an employer in that case. A suit against the sheriff is a suit against the county, and Coahoma County was a named defendant in that action. The Court therefore concludes that it is bound by the Fifth Circuit decision in *Lee* that pursuant to the FLSA and Mississippi law, Hopkins in his individual capacity is an employer as that term is defined under the FLSA.[12]

▮▮▮▮ The Court further finds that Madison County is a joint employer of the Plaintiffs in this matter. As noted by Madison County in its brief, this Court should consider the following factors in determining employer status under the FLSA:

(1) the power to hire and fire the employee;

(2) supervision and control of the employee's work schedule or conditions of employment;

(3) determining the rate and method of payment for the hours worked; and

(4) maintenance of employment records.

*Brickey v. County of Smyth*, 944 F.Supp. 1310, 1315 (W.D.Va.1996); *see also Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 329 (5th Cir.1993).[13]

Authority to hire and fire employees of the Sheriff's Department is vested in the sheriff "subject to the budget for the sheriff's office approved by the county board of supervisors." Miss.Code Ann § 19–25–19 (rev. 1995). Thus, although Madison County lacks the power to hire and fire, the County has some control in this area by allocating funds to the Sheriff to operate his department.

The Sheriff is the person who supervises and controls the work schedules and condi-

**10.** The district court in *Lee* did not make any findings concerning the employer status of the Sheriff. The plaintiffs in that action sought the recovery of liquidated damages based upon the actions of the Sheriff in denying them any overtime pay. *Lee*, 937 F.2d at 226. The plaintiffs did not assert, and the Fifth Circuit did not address, whether the Sheriff should be held jointly and severally liable for the overtime pay which was awarded to the plaintiffs. This issue was also not addressed by any of the parties or the district court on remand from the Fifth Circuit.

**11.** The Plaintiffs rely upon *Welch v. Laney*, 57 F.3d 1004 (11th Cir.1995), to support their claim that a sheriff may only be held liable in his official capacity. The *Welch* court did not analyze this issue, but concluded in one sentence that "[t]he district court also did not err in dismissing Welch's Equal Pay Act claim against Sheriff Laney in his individual capacity because Sheriff Laney in his individual capacity had no control over Welch's employment and does not qualify as Welch's employer under the Act." *Id.* at 1011. From the cursory treatment given this issue, this Court cannot discern why the *Welch* court reached this conclusion or whether such conclusion was based upon the duties of a sheriff under Alabama law. In any event, this Court is not bound by the decisions of another circuit.

Furthermore, after researching this issue exhaustively, it appears that the majority of cases have concluded that public officials, just like their counterparts in the private sector, may be held individually liable for violations of the FLSA.

**12.** The Court notes that the language used by the *Lee* court stated that an individual who is deemed to be an employer under the FLSA *"may be jointly severally liable for damages resulting from the failure to comply with the FLSA." Lee*, 937 F.2d at 226 (emphasis added). The Court offers no opinion at this juncture concerning whether the finding that Hopkins, as an individual, is an employer under the FLSA mandates the imposition of liability upon him for violations of the FLSA if the Court determines at trial that such violations should be solely attributed to Madison County. The Court may require further briefing on this issue prior to trial or simply hear arguments from counsel on the issue during trial.

**13.** The Court has previously concluded that Hopkins is an employer under the FLSA and need not analyze each of these factors as to him. The Court notes that pursuant to the statutes set forth by the *Lee* court, Hopkins hired and fired his employees; he supervised their schedules and conditions of employment; and he determined their rate of pay.

tions of employment of his employees. The only connection which Madison County has in this regard is that the Sheriff reports the hours worked by his employees to the Chancery Clerk who prepares the checks for such employees. The facts are in dispute concerning why the Sheriff only reported eight hours of work per day for each of the Plaintiffs in this case even though some or all of them worked at least some overtime. According to the sheriff, he was following the instructions of the Board of Supervisors and/or the Chancery Clerk not to turn in any overtime because Madison County allegedly had a policy of not paying any overtime.

The third factor concerning the rate and method of payment is related to the second factor concerning conditions of employment. Although the Sheriff determines the rate of pay for each of the Plaintiffs, Madison County actually pays these employees. The Sheriff submits a budget to the Board of Supervisors which the Board "may increase or reduce ... as it deems necessary and proper." Miss.Code Ann. § 19–25–13 (rev.1995). Thus, the ultimate authority for approving the necessary funds for paying any overtime to the Plaintiffs rests with the Board of Supervisors.[14]

Finally, with regard to the maintenance of employment records, the Sheriff is responsible for keeping such records concerning his employees. Although the Sheriff admits that he did not keep accurate time cards for his employees due to the alleged policy by Madison County of not paying overtime, such failure is not an automatic violation of the FLSA. As noted by the *Lee* court, the "FLSA does not dictate that an employer keep their [sic] records in any particular form." *Lee,* 937 F.2d at 227.[15] Once again, however, Madison County has some responsibility in this regard because the time cards prepared by an employee of the Sheriff's Department were turned in to the Chancery Clerk for the preparation of the Plaintiffs' paychecks.

Madison County also asserts that it cannot be held liable for the payment of overtime to the Plaintiffs unless it knew or should have known that the Plaintiffs were working overtime. *See Bailey v. County of Georgetown,* 94 F.3d 152, 157 (4th Cir.1996) (concluding that "[i]n order to be liable for overtime wages under the FLSA, an employer must have 'knowledge, either actual or constructive, of [that] overtime work.'" (citation omitted)). Madison County relies upon the FLSA definition of "employ" which is "to suffer or permit to work." 29 U.S.C. § 203(g). Madison County asserts that it "did not suffer or permit the plaintiffs to work overtime." Defendants' Memorandum in Support of Motion for Partial Summary Judgment at 15.

The Court finds that this argument is unavailing. In his deposition testimony, Hopkins stated that he asked about budgeting for overtime every year and was told by individual members of the Board of Supervisors that Madison County was not going to pay overtime. Although the Defendants assert that Madison County can only act through a resolution passed by the Board of Supervisors, the Court concludes that pursuant to the FLSA and its broad definition of employer, Madison County cannot disavow any knowledge of the overtime worked by the Plaintiffs simply because the Board of Supervisors failed to pass a resolution recognizing

---

**14.** The Court notes in this regard that the Board of Supervisors, on August 23, 1996, adopted a resolution to "eliminate all overtime and compensatory" time by employees of Madison County and to adopt a policy of "not allowing or paying for either item...." August 23, 1996, Resolution, attached as Exhibit U to Plaintiffs' Motion for Partial Summary Judgment. Subsequently, on September 13, 1996, the Board adopted a resolution to "clarify" its position which would allow payment for overtime in emergency situations and only upon a request from the appropriate department head for "approval for a budget amendment from the Board ... prior to the actual incurring of the claim or payroll expense...." September 13, 1996, Resolution, attached as Exhibit W to the Plaintiffs' Motion for Partial Summary Judgment. The Board did not address how prior approval could be obtained in an "emergency" situation.

**15.** In *Lee,* the plaintiffs were seeking liquidated damages due to the failure of the sheriff to keep records of their actual work times. The Fifth Circuit concluded that "[t]his fact alone is not dispositive since radio logs were kept from which their work times could be discerned and work schedules were regularly posted and kept." *Lee,* 937 F.2d at 227.

such overtime. he Court further concludes that even if the individual supervisors disavow any knowledge of the overtime worked by the Plaintiffs, the Sheriff, in his official capacity, is a named Defendant in this lawsuit. The Sheriff certainly had knowledge of the overtime worked by his deputies and, as has been stated many times, a suit against the Sheriff in his official capacity is a suit against Madison County.[16] Thus, Madison Count cannot avoid liability for the payment of overtime compensation based upon any asserted lack of knowledge of the overtime allegedly worked by the Plaintiffs.

■ In conclusion, the Court finds that Sheriff Jessie Hopkins and Madison County are the joint employers of the Plaintiffs in this action. Although all of the parties to this case have attempted to make distinctions based upon the individual and/or official capacity of the Sheriff and the knowledge and/or lack thereof of Madison County regarding the overtime now claimed by the Plaintiffs, the conclusion of the Court is that the Sheriff in his individual and official capacities is an employer under the FLSA. Lest there be any question on this issue, the Court also concludes that due to their budgetary authority and ability to virtually "shut down" the Sheriff's Department, the members of the Board of Supervisors, in their respective official capacities, are also the employers of the Plaintiffs. Thus, Madison County is potentially liable for the payment of overtime as the employer of the Plaintiffs (1) due to the status of the Sheriff in his official capacity as their employer, and (2) due to the status of the members of the Board of Supervisors in their official capacities as the employers of the Plaintiffs.[17]

B. *Method of Calculating Overtime*

1. *Section 7(k) Exemption*

■ Madison County asserts that any overtime to be paid to the Plaintiffs should be calculated pursuant to section 7(k) of the FLSA, 29 U.S.C. § 207(k) ("the § 7(k) exemption") which states in relevant part:

> No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of ... any employee in law enforcement activities ... if—
>
> (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or
>
> (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days,
>
> compensation at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(k). The regulation promulgated by the Secretary of Labor pursuant to this section is 29 C.F.R. § 553.230. This regulation contains a table setting forth maximum hours standards for work periods ranging from 7 to 28 days. For law enforcement personnel, the range is from 43 hours in a 7–day work period to 171 hours in a 28–day

---

**16.** The only parties to specifically address the employment status of the Sheriff in his official capacity are the Plaintiffs in opposition to the Defendants' Motion for Partial Summary Judgment. The Court has concluded that Hopkins, individually, is an employer under the FLSA. The Court also concludes that the Sheriff, in his official capacity, is also an employer under the FLSA. Thus, any judgment obtained against the Sheriff in his official capacity is a judgment against Madison County.

**17.** The Court expresses no opinion concerning whether the members of the Board of Supervisors could be held individually liable as employers under the FLSA because the Plaintiffs have voluntarily dismissed such claims against the individual members of the Board.

work period. *Id.* According to this regulation, a law enforcement officer is not entitled to overtime pay until he has worked the stated number of maximum hours corresponding to the applicable work period.

Madison County asserts that, pursuant to the standards set forth in the regulation, it should not be required to pay overtime for the applicable work period until these hours have been exceeded. Madison County asserts that the 28–day work period is the most appropriate work period for the Plaintiffs because their work was scheduled monthly. Madison County further asserts that the deputies in the *Lee* case were paid monthly, as are the Plaintiffs in this case.[18]

The Plaintiffs assert that the § 7(k) exemption is not a given and that Madison County bears the burden of proof in showing that it chose to invoke the exemption. According to the Plaintiffs, if Madison County cannot show that it chose to invoke the § 7(k) exemption, then it is required to pay overtime pursuant to 29 U.S.C. § 207(a)(1).[19] The Plaintiffs claim that Madison County currently calculates overtime for them at a rate of one and one-half times their regular rate of pay after 40 hours of work in a one-week period pursuant to 29 U.S.C. § 207(a)(1). Thus, because Madison County currently is not taking advantage of the § 7(k) exemption, the Plaintiffs assert that Madison County may not retroactively take advantage of the exemption for the calculation of their overtime claims. The Plaintiffs rely upon a January 13, 1994, Letter Ruling from the Secretary of Labor, which states in relevant part as follows:

It is our view that a claim to the § 7(k) exemption may not be objectively made retroactively. Thus, it is our position that an employer is not relieved from § 7(k) overtime compensation unless § 7(k) has been claimed and affected employees have actually been paid in accordance with its provisions.

January 13, 1994, Secretary of Labor Letter Ruling, attached as Exhibit 6 to Plaintiffs' Motion for Partial Summary Judgment. Alternatively, the Plaintiffs assert that the only recurring work period recognized by the Madison Count Sheriff's Department is monthly, thus eliminating the possibility for calculating overtime pursuant to the § 7(k) exemption.

The Court finds that Madison County is not required to show that it specifically elected to pay overtime pursuant to the § 7(k) exemption in order to take advantage of the provisions of that exemption. Although the Plaintiffs rely upon *Birdwell v. City of Gadsden,* 970 F.2d 802 (11th Cir.1992), the Court finds that *Birdwell* supports the position of Madison County rather than that of the Plaintiffs. The *Birdwell* court concluded as follows:

The plaintiffs argue that the city has waived the advantages of the 7(k) exemption by virtue of its contract which promises to pay overtime after 40 hours and by its conduct of paying overtime after 40 hours. We have held that "parties cannot contract out of the Act. . . . the question of contract or agreement is not relevant to whether the FLSA covers a given situation." . . . Although the city agreed in the contract to pay overtime after 40

---

**18.** The Fifth Circuit remanded the case to the district court for a determination of the appropriate work period. *Lee,* 937 F.2d at 224–25. The court noted that the plaintiffs were assigned to a 28–day rotating schedule and that the district court calculated overtime based upon a 7–day work period. *Id.* at 225. The Fifth Circuit concluded that "[w]hile a 7–day work period ultimately may be found to be proper on remand, we are unable to discern this from the court's opinion or the record." *Id.* On remand, the district court concluded that a 28–day work period was the appropriate period for the plaintiffs in that case. *Lee v. Coahoma County,* Memorandum Opinion at 8–10, No. DC88–56–B (N.D.Miss. Oct.

21, 1992), attached to Defendants' Rebuttal Memorandum.

**19.** That section provides in relevant part:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

hours, the FLSA requires the city to pay overtime after 40 hours only if the city has not adopted a seven day work period. Thus, while there may be a breach of contract, the FLSA is not violated if the FLSA does not cover the situation.

*Id.* at 806 (citations omitted). In *Barefield v. Village of Winnetka,* 81 F.3d 704 (7th Cir. 1996), the court also concluded that the § 7(k) exemption only requires a factual showing that the defendant has adopted a work period which falls within the statutory definition. *Id.* at 710. The court rejected the plaintiffs' argument that because their 28–day work period was adopted prior to the enactment of § 7(k) of the FLSA, the defendant could not invoke the exemption:

> We note first that nothing in the language of the statute, 29 U.S.C. § 207(k), requires Winnetka to express a "declaration of intent" to qualify for the exemption. We hold that it is enough that Winnetka's police department met all of the factual criteria for § 7(k). Second, we hold that Winnetka need not have had the 7(k) exemption in mind when it adopted a 28–day work period. Indeed, it is likely that Congress modelled [sic] the 7(k) exemption after the 28–day scheduling periods used by many police and fire departments before the enactment of § 7(k).... The Winnetka Police Department's schedule is a case in point. Winnetka established its police department's 28–day work period before § 7(k) existed. That is enough. When a schedule meets all of the factual criteria for § 7(k), the employer qualifies for the 7(k) exemption regardless of whether the employees approve.

*Id.*

The Court finds that in order for Madison County to invoke the § 7(k) exemption, it must show that as of the relevant time period, it had adopted a work period of at least 7 but no more than 28 days. If Madison County can make this actual showing, then it will not be required to pay overtime to the Plaintiffs until they have worked more than the maximum number of hours per work period, as set forth in 29 C.F.R. § 553.230(c), which would require such payment.

The Court further finds that at this point in the litigation, a genuine issue of material fact exists concerning the work period of the Plaintiffs in this case. The regulation defining "work period" provides as follows:

> (a) As used in section 7(k), the term "work period" refers to any established and regularly recurring period of work which, under the terms of the Act and legislative history, cannot be less than 7 consecutive days nor more than 28 consecutive days. Except for this limitation, the work period can be of any length, and it need not coincide with the duty cycle or pay period or with a particular day of the week or hour of the day. Once the beginning and ending time of an employee's work period is established, however, it remains fixed regardless of how many hours are worked within the period. The beginning and ending of the work period may be changed, provided that the change is intended to be permanent and is not designed to evade the overtime compensation requirements of the Act.

> (b) An employer may have one work period applicable to all employees, or different work periods for different employees or groups of employees.

29 C.F.R. § 553.224. Although the Plaintiffs rely upon the testimony of Shelby Burnside, an undersheriff with the Madison County Sheriff's Department, that the only recurring work period recognized by that department is monthly, the Court concludes that Madison County should be given the opportunity at trial to present evidence, if any exists, to show that the work period or periods for the Plaintiffs is at least 7 and no more than 28 days. If Madison County can show that the work period or periods for the Plaintiffs fits within the 7 to 28–day category, then Madison County will be allowed to invoke the § 7(k) exemption with regard to the payment of overtime to the Plaintiffs.

### 2. *Fluctuating Workweek*

■ Madison County asserts that it is entitled to use the fluctuating workweek or salary coefficient method to determine the rate of pay in calculating any overtime pay which is due the Plaintiffs. Madison County

relies upon an opinion from the Department of Labor to support this position. *See* July 15, 1996, Secretary of Labor Letter Ruling, attached as Exhibit O to Defendants' Motion for Partial Summary Judgment. The question and answer concerning payment of overtime back pay are as follows:

Q.2. If a county paid nonexempt employees straight salaries (making only statutory deductions, i.e., payroll taxes, etc.) without regard to hours worked (whether few or many), but did not pay additional overtime premium compensation, can the coefficient table be used for computing extra half-time for overtime hours worked?

A.2. Yes. Where the facts show that a straight salary was paid without regard to hours worked and FLSA overtime compensation was not paid, the coefficient table may be used to compute back pay.

*Id.* at 1. According to Madison County, the Plaintiffs understood that the salary they were being paid was for all of the hours they were working, no matter how few or how many. Therefore, because the Plaintiffs, theoretically,[20] have already been compensated in salary for all hours worked, they are only due one-half of their regular hourly rate of pay for any hours worked over 171 for a 28–day work period or 43 in a 7–day work period. Madison County relies on the *Lee* decision to support its argument that overtime pay may be calculated retroactively based upon the fluctuating workweek standard.

The Plaintiffs assert that Madison County should not be allowed to rely upon the fluctuating workweek standard in computing the

overtime pay due the Plaintiffs pursuant to the clear terms of 29 C.F.R. § 778.114 defining the fluctuating workweek and the case law interpreting this regulation. The Plaintiffs rely upon the testimony of several Madison County officials who stated that they had never heard of a fluctuating workweek and had no agreement with the Plaintiffs to pay them only one-half their regular hourly rate for overtime hours. *See* Brief in Support of Plaintiffs' Motion for Partial Summary Judgment at 14–17 (setting forth the testimony of various Defendants in this case concerning the fluctuating workweek). Plaintiffs also assert that if Madison County had an agreement to pay them based upon this method, Madison County would not now be paying them one and one-half times their regular rate of pay for all hours worked over 40 hours per week.[21] Finally, the Plaintiffs assert that Madison County does not pay them a salary regardless of the number of hours worked, presenting evidence of various employees who were not paid when they were absent from work if they did not have sick or personal leave time accumulated to cover such absence.

The regulation governing this issue is entitled "[f]ixed salary for fluctuating hours" and provides in relevant part as follows:

(a) An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many.

---

**20.** The Court notes that Madison County is attempting to invoke the fluctuating workweek after the fact because it never paid any overtime to the Plaintiffs prior to April, 1996.

**21.** Plaintiffs also claim that Madison County should not be allowed to rely upon the Letter Ruling from the Department of Labor because of the "blatant misstatement of the facts" by defense counsel contained in his letter requesting the ruling. The Court notes that although the facts of this case are in dispute, at least some of the "facts" set forth in the letter to the Department of Labor clearly do not describe the situation in Madison County. For example, the letter states: "I represent several Mississippi counties that are currently using the coefficient plan to compute pay for nonexempt employees." May

22, 1996, Letter from Gary Friedman to Department of Labor at 1. Plaintiffs have presented testimony that Madison County is currently paying then one and one-half times their regular rate of pay for all hours worked over 40 in a week. *See* Deposition of David Richardson at 59, attached as Exhibit G to Plaintiffs' Motion for Partial Summary Judgment. Richardson was the Rule 30(b)(6) designee who testified on behalf of Madison County during discovery in this matter. Because the Court will not rely upon the Letter Ruling from the Department of Labor to support the rulings in this opinion, the Court need not determine whether the Ruling was based upon reliance by the Department of Labor upon allegedly erroneous facts.

*Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number,* rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, *and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate of not less than one-half his regular rate of pay.* Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

(b) The application of the principles above stated may be illustrated by the case of an employee whose hours of work do not customarily follow a regular schedule but vary from week to week, *whose overtime work is never in excess of 50 hours in a workweek,* and whose salary of $250 a week is paid with the understanding that it constitutes his compensation, except for overtime premiums, for whatever hours are worked in the workweek. If during the course of 4 weeks this employee works 40, 44, 50, and 48 hours, his regular hourly rate of pay in each of these weeks is approximately $6.25, $5.68, $5, and $5.21, respectively. Since the employee has already received straight-time compensation for all hours worked, only additional half-time pay is due. . . .

(c) The "fluctuating workweek" method of overtime payment may not be used un-less the salary is sufficiently large to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the Act, *and unless the employee clearly understands that the salary covers whatever hours the job may demand in a particular workweek and the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked. Typically, such salaries are paid to employees who do not customarily work a regular schedule of hours and are in amounts agreed on by the parties as adequate straight-time compensation for long workweeks as well as short ones, under the circumstances of the employment as a whole.* Where all the legal prerequisites for use of the "fluctuating workweek" method of overtime payment are present, the Act, in requiring that "not less than" the prescribed premium of 50 percent for overtime hours worked be paid, does not prohibit paying more. On the other hand, where all the facts indicate that an employee is being paid for his overtime hours at a rate no greater than that which he receives for nonovertime hours, compliance with the Act cannot be rested on any application of the fluctuating workweek overtime formula.

29 C.F.R. § 778.114 (emphasis added).

The Court finds that genuine issues of material fact exist which preclude summary judgment in favor of Madison County on this issue. The Court cannot agree with Madison County that the "fluctuating workweek is a method of calculating payment under the FLSA, nothing more, nothing less." Defendants' Memorandum of Authorities in Support of Response to Plaintiffs' Motion for Partial Summary Judgment at 14. Rather, the regulation sets forth several prerequisites for using the fluctuating workweek method to calculate overtime. Only after all of these prerequisites have been satisfied may the Defendants rely upon this method in calculating the back pay claimed by the Plaintiffs. Under the circumstances of this case, genuine issues of material fact exist concerning (1) whether the deputies were

paid when they were absent from work, even if they had no sick leave or personal leave; (2) whether there was any clear mutual understanding between the parties concerning the method of pay; and (3) even if such an understanding could be implied due the acceptance by the Plaintiffs of the compensation offered to them, whether such an arrangement is allowed under the FLSA and 29 C.F.R. § 778.114.

The Court further finds that reliance upon the *Lee* decision as to this particular issue does not support the position advocated by Madison County. In *Lee,* Coahoma County concluded, after the Supreme Court decision in *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), that the method being used for calculating the deputies' compensation violated the FLSA. *Lee,* 937 F.2d at 222. Counsel for Coahoma County,[22] after attending a seminar on the FLSA, devised a compensation plan pursuant to the § 7(k) exemption and purporting to comply with the FLSA. *Id.* This plan involved paying the deputies the same amount, but changed the method of compensation from a salary base to a wage basis which included adjusting the hourly rate to be paid to each employee. *Id.*[23] The Coahoma County Sheriff estimated that each deputy worked approximately 245 hours each month, delineated as 171 hours of straight time (as allowed by 29 C.F.R. § 553.230) and 74 hours overtime. Based upon this estimate, the Sheriff turned in time sheets each month indicating that each deputy had worked 171 hours and 74 hours overtime. *Id.* The parties agreed that the hours submitted bore no relation to the actual hours worked by the deputies. Furthermore, it was undisputed that the Sheriff did not keep records detailing the actual hours worked by the deputies. *Id.* In addressing the good faith of Coahoma County in attempting to comply with the FLSA, the *Lee* court noted the following:

> The County sought the advice of its counsel in structuring a compensation plan which complied with the FLSA. After attending a seminar on the FLSA, the County's counsel and the chancery clerk devised a plan and consulted with the Department of Labor about its acceptability. The County relayed this plan to the Sheriff who did not implement it correctly.

*Id.* at 227.[24]

The facts in this case, as advocated by the Plaintiffs and supported by Sheriff Hopkins, indicate that the only plan in place in Madison County was a stubborn refusal by the Board of Supervisors to pay any overtime whatsoever. According to Sheriff Hopkins, he was instructed, on numerous occasions, by the Chancery Clerk and individual members of the Board of Supervisors, not to submit any overtime for his deputies because such overtime would not be paid. Madison County disputes these assertions, claiming that it has always paid overtime to other county employees when such overtime was properly documented. If the Court adopts the position advocated by Madison County, the fact that the deputies continued to work and receive the same compensation with no regard to the number of hours they worked is evidence of such a clear mutual understanding.

22. Counsel for Coahoma County in *Lee* is the same counsel representing Madison County in this action.

23. The *Lee* court did not address why it ultimately concluded that 29 C.F.R. § 778.114 could be used to calculate overtime in light of the finding that the deputies were not paid a salary, but rather were paid based upon an hourly rate.

24. On remand from the Fifth Circuit, the district court calculated the overtime back pay for the plaintiffs as follows:

[T]he correct overtime rate per 28–Day Work Period is:

.5 X regular hourly rate for hours worked in excess of 171 per 28–day Work Period.

1.5 X regular hourly rate for hours worked in excess of 245 hours per 28–day Work Period.

*Lee v. Coahoma County,* Order at 3, No. DC88–56–B (N.D.Miss. May 20, 1993). The Court notes that the regular hourly rate per work period was computed by the district court as follows:

Monthly Salary X 12 months = Yearly Salary; Yearly Salary divided by 13 = 28–Day Work Period Compensation;

28–day Work Period Compensation divided by number of hours actually worked by deputy per that Work Period = regular hourly rate. *Id.*

The Court is not persuaded by this argument. Such an argument would allow Madison County to require its deputies to work an unlimited number of hours and accept whatever compensation is offered. The FLSA specifically precludes such an arrangement, requiring that the salary paid be sufficiently large "to assure that no workweek will be worked in which the employee's average hourly earnings from the salary fall below the minimum hourly wage rate applicable under the Act...." 29 C.F.R. § 778.114(c). The Court concludes that due to the conflicting testimony of the various witnesses, genuine issues of material fact exist concerning whether there was a "clear mutual understanding" with the deputies concerning their method of compensation.[25]

### C. Liability Under the FLSA

██ Plaintiffs assert that they are entitled to summary judgment on the issue of liability under the FLSA. Plaintiffs rely upon the Supreme Court decision in *Garcia v. San Antonio Metropolitan Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), which concluded that employees of state and local governments are covered by the overtime provisions of the FLSA. Plaintiffs further rely upon the investigation of the Madison County Sheriff's Department by the Department of Labor which concluded that the employees were entitled to $342,356.14 in back pay for overtime. Plaintiffs, after filing the instant action and conducting discovery, retained Charles R. Lindsay, a forensic accountant, to conduct an investigation and determine the amount of overtime back pay owed to them. Lindsay concluded that the

Plaintiffs are owed $733,069.00 in overtime back pay. According to the Plaintiffs, they should not be penalized for Hopkins' failure to keep accurate time records. Relying upon *Donovan v. Grantham*, 690 F.2d 453 (5th Cir.1982), Plaintiffs assert that they have presented sufficient evidence to show the amounts they are owed "through just and reasonable inference...." *Id.* at 458. Plaintiffs claim that Madison County has failed to offer sufficient proof to rebut their evidence.

Madison County asserts that the Plaintiffs have failed to offer conclusive proof that each and every one of them is entitled to overtime back pay. Madison County further asserts that it has presented sufficient evidence to refute the Plaintiffs' claims for overtime.

The Court finds that genuine issues of material fact exist concerning this issue. Although Madison County does not concede the issue, it appears that at least some back pay for overtime is owed to some or all of the Plaintiffs. Because this issue requires a specific determination of the facts, the Court will not decide the issue until all relevant evidence has been presented at trial.

### D. Status of Mary Mitchell Rushings

██ Madison County asserts that Mary Mitchell Rushings ("Rushings") is exempt from the overtime requirements of the FLSA because she is an executive employee pursuant to 29 C.F.R. § 541.1(f). Rushings is the jail administrator for the Madison County Jail ("the Jail") and supervises all jail employees. Rushings also interviews applicants for positions with the Jail. According to Madison County, Rushings fits within that cate-

---

**25.** If the Court determines at trial that the salary paid to each deputy was intended to be compensation for a maximum fixed number of hours, as was the case in *Lee* with the 245–hour maximum, then Madison County will only be required to compensate each deputy at a rate of one-half his or her regular rate for any hours worked over 171 up to the agreed maximum number. Any hours worked over the maximum number must be compensated at one and one-half times the regular rate of pay. If, on the other hand, the Court concludes that Madison County expected the deputies to work an unlimited number of hours for the salary they were being paid, then Madison County will not be able to invoke the advantageous provisions of the fluctuating workweek standard. The Court notes that the regula-

tion specifically contemplates a "clear mutual understanding" between the parties that the compensation is for all hours worked. 29 C.F.R. § 778.114(a). The Court further notes that the regulation also contemplates that the FLSA would not allow an employer to invoke the fluctuating workweek standard where the employees are required to work an unlimited number of hours and receive the same compensation no matter the number of hours worked. *Id.* § 778.114(b) (setting forth an example for the use of the fluctuating workweek method for an employee "whose overtime work is never in excess of 50 hours in a workweek ..."). The Court will make these determinations after hearing the evidence presented at trial.

gory of high salaried executive employees described in 29 C.F.R. § 541.119.

Plaintiffs claim that Rushings spends the majority of her days on the job working with the employees whom she supervises and performing the same tasks as those employees. Thus, according to the Plaintiffs, pursuant to 29 C.F.R. §§ 541.1, 541.111 and 541.112, Rushings does not fit within that category of employees who is exempt from the overtime provisions of the FLSA.

29 C.F.R. § 541.1 provides in relevant part as follows:

The term *employee employed in a bona fide executive * * * capacity* in section 13(a)(1) of the Act shall mean any employee:

(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section . . . ; and

(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week . . . exclusive of board, lodging or other facilities. . . .

*Id.* Plaintiffs rely upon this regulation, especially subsection (e), to support their argument.

29 C.F.R. § 541.119 is a "special proviso for high salaried executives" and provides in relevant part:

(a) Except as otherwise noted in paragraph (b) of this section, § 541.1 contains an upset or high salary proviso for managerial employees who are compensated on a salary basis at a rate of not less than $250 per week exclusive of board, lodging, or other facilities. Such a highly paid employee is deemed to meet all the requirements in paragraphs (a) through (f) of § 541.1 *if the employee's primary duty consists of the management of the enterprise in which employed or of a customarily recognized department or subdivision thereof and includes the customary and regular direction of the work of two or more other employees therein.* If an employee qualifies for exemption under this proviso, it is not necessary to test that employee's qualifications in detail under paragraphs (a) through (f) of § 541.1 of this part.

*Id.* (emphasis added). Madison County relies upon this provision to support its position that Rushings is exempt from the overtime provisions of the FLSA.

The Court finds that as long as Rushings' salary is greater than $250.00 per week, she falls within that class of "high salaried executives" contemplated by 29 C.F.R. § 541.119. The Court further finds, however, that pursuant to the definition of primary duty contained in 29 C.F.R. § 541.103, genuine issues of material fact exist concerning whether Rushings' "primary duty" is the management of the Jail. That regulation provides in relevant part:

A determination of whether an employee has management as his primary duty must be based on all the facts in a particular case. The amount of time spent in the performance of the managerial duties is a useful guide in determining whether management is the primary duty of an employee. In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as

his primary duty if the other pertinent factors support such a conclusion. Some of these factors are the relative importance of the managerial duties as compared with other types of duties, the frequency with which the employee exercises discretionary powers, his relative freedom from supervision, and the relationship between his salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor.

*Id.*[26]

The Court finds that it lacks all of the relevant information to determine whether Rushings' primary duty is the management of the Jail, including, *inter alia,* the salary of the employees supervised by Rushings; the salary paid to Rushings; the amount of time Rushings spends doing the same work as those whom she supervises; and whether other employees at the Jail, who are not considered to be exempt from the overtime provisions of the FLSA, perform the same type of supervisory duties as Rushings in her absence. These are just some of the questions which can be addressed at trial, particularly through the testimony of Rushings. Summary judgment on this issue is therefore denied.

### E. *Willfulness*

■■■■■ The FLSA contains a 2–year statute of limitations for bringing a cause of action for the violation of its provisions, "except that cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). A violation of the FLSA is not willful unless the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988).

Madison County asserts that it did not willfully violate the FLSA because the Board

of Supervisors never passed a resolution during or before the relevant time period not to pay overtime.[27] According to Madison County, the Sheriff failed to turn in any overtime prior to January, 1996, and prior to that time, Madison County had no knowledge of any overtime being worked by the Plaintiffs.

The Plaintiffs contend that as early as January 9, 1936, the Board of Supervisors knew that its employees were covered by the overtime provisions of the FLSA. On that date, the Board received an opinion from the Attorney General, at the request of the attorney for the Board, stating that Madison County was obligated to pay overtime to its employees. *See* January 9, 1986, Attorney General Opinion, attached as Exhibit P to Plaintiffs' Motion for Partial Summary Judgment.[28] Plaintiffs further assert that the Board of Supervisors adopted an overtime policy on March 8, 1991, providing as follows:

> In those instances where an emergency prevails and overtime pay is previously authorized by the Board of Supervisors, the rate of pay shall be 1 1/2 times the regular hourly rate of pay to every nonexempt employee who works more than 40 hours in one week.

March 8, 1991, Resolution, attached as Exhibit R to the Plaintiffs' Motion for Partial Summary Judgment. Plaintiffs also assert that during 1985, both Deputy Hubert Roberts and Sheriff Hopkins, who at that time was a jailer, made a claim with the Board for overtime. All of these facts, according to the Plaintiffs, should have put Madison County on notice that it could not legally refuse to pay overtime to county employees, including the employees of the Sheriff's Department.

The Court finds that genuine issues of material fact exist concerning the willfulness of Madison County in failing to pay overtime allegedly due the Plaintiffs, and summary judgment on this issue should therefore be

---

**26.** The regulation provides some examples involving production, sales and data processing work which do not appear to be relevant to the facts of this case.

**27.** Madison County does not dispute that the Board of Supervisors passed a resolution not to pay overtime on August 23, 1996. August 23,

1996, Resolution, attached as Exhibit U to Plaintiffs' Motion for Partial Summary Judgment.

**28.** The Plaintiffs note that 3 of the 5 current supervisors were on the Board in January, 1936, when the Attorney General Opinion was received.

denied at this juncture. Because there will be a trial of this issue, the Court will determine, after hearing the evidence at trial, whether the failure of Madison County to pay overtime to the Plaintiffs was willful. Because the Court has reached this conclusion, the parties should be prepared to present evidence of the overtime worked by the various Plaintiffs for a 3–year, rather than a 2–year, period.[29]

## F. *Liquidated Damages*

■■■ 29 U.S.C. § 216(b) provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title *shall* be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." *Id.* (emphasis added). The FLSA provides an affirmative defense to employers regarding the payment of liquidated damages:

> In any action ... to recover ... unpaid overtime compensation, or liquidated damages, under the [FLSA] ..., if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] ..., the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260. The *Lee* court discussed this section in concluding that the district court did not abuse its discretion in refusing to award liquidated damages:

> This court has previously held that § 260 invests the district court with two levels of discretion.... If the district court finds that the employer's action

which violated the FLSA was taken in good faith, which good faith was supported by reasonable grounds for believing that the action complied with the FLSA, it may choose not to award liquidated damages.... However, even if the district court determines that the employer's actions were in good faith and based on reasonable grounds, the court has discretion to award liquidated damages.... The dual and specific findings of good faith and reasonable grounds have been interpreted strictly by this court.

*Lee*, 937 F.2d at 226–27 (citations omitted).

The Court finds that genuine issues of material fact exist concerning whether the employers[30] in this matter acted in good faith and based upon reasonable grounds that their actions did not violate the FLSA. For this reason, none of the parties is entitled to summary judgment on the issue of liquidated damages.

## G. *Retaliation Claims*

■■■ The Plaintiffs have asserted retaliation claims pursuant to 29 U.S.C. § 215(a)(3) which prohibits an employer from discharging or in any other manner discriminating against an employee because that employee has filed a claim pursuant to the FLSA. All of the actions upon which the Plaintiffs base their retaliation claims are actions taken by the Board of Supervisors with regard to the Sheriff and the appropriation of money to the Sheriff. The Court finds as a matter of law that these disputes between the Board and the Sheriff cannot be the basis for a retaliation claim by the Plaintiffs. The Plaintiffs have offered no proof of any adverse employment action taken against them by the Board of Supervisors, nor could they, because the Board does not have the power to hire and fire them. Furthermore, the Plaintiffs have offered no proof that the Sheriff, who does have the power to hire and fire them, has elected to do so due to any action taken by

---

**29.** The Court notes in this regard that the parties have already developed such evidence for a 3–year time period. The Court will discuss with the parties at the pretrial conference the manner and timing of the presentation of such evidence at trial. In this regard, the Court will attempt to rule on the issue of willfulness prior to the pre-

sentation of evidence concerning the actual overtime worked by the various Plaintiffs.

**30.** As previously held in this opinion, Madison County, Sheriff Hopkins in his official capacity and Hopkins in his individual capacity are joint employers of the Plaintiffs in this matter.

the Board. Absent proof of any such adverse employment actions, the Plaintiffs' retaliation claims should be dismissed.

 Hopkins has also asserted a retaliation claim in his counterclaim against Madison County. Madison County asserts that it is not Hopkins' employer because he is an elected official of the State of Mississippi. Because the retaliation provisions of the FLSA only apply to employees, Madison County asserts that Hopkins' retaliation claim should also be dismissed.

The Court agrees with Madison County that Hopkins' retaliation claim should be dismissed. 29 U.S.C. § 203(e)(2)(C)(ii)(I) excludes from the definition of an employee of a public agency any person who "holds a public elective office of that State, political subdivision, or agency...." Because Sheriff Hopkins is an elected official, he does not qualify as an employee under the FLSA and cannot maintain a claim for retaliation. Hopkins' retaliation claim should therefore be dismissed.

### H. *Plaintiffs' Section 1983 Claims*

 The Plaintiffs have alleged claims pursuant to 42 U.S.C. § 1983 for violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Madison County asserts that these claims should be dismissed because the FLSA is the exclusive remedy for the Plaintiffs' claim for overtime back pay.

In the context of discrimination cases brought pursuant to 42 U.S.C. § 2000e, *et seq.*, commonly referred to as Title VII, the Fifth Circuit has concluded that a plaintiff may maintain an action pursuant to Title VII and § 1983 when an employer's conduct violates both Title VII and a separate constitutional or statutory right. *See Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565 (5th Cir.1989), *cert. denied,* 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990). In subsequent cases, the Fifth Circuit has recognized that a plaintiff's "putative § 1983 claims, arising as they do from precisely the same allegedly discriminatory acts as do his Title VII claims, should have been dismissed." *Jackson v. City of Atlanta*, 73 F.3d 60, 63 (5th Cir.), *cert. denied,* ── U.S. ──, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996).

The Court finds that the Plaintiffs may not maintain claims pursuant to 42 U.S.C. § 1983 against Madison County or the individually named Defendants because the FLSA provides the exclusive remedy for the Plaintiffs under the circumstances of this case. The Court has previously dismissed Plaintiffs' claims for retaliation under the FLSA. Therefore, any of the Defendants' actions upon which the Plaintiffs' relied to support those claims also do not support the Plaintiffs' claims pursuant to § 1983. Furthermore, the Court concludes that the Plaintiffs are simply seeking backpay for overtime hours allegedly worked by them and for which they were not paid. The failure to pay overtime is one of the main purposes for the enactment of the FLSA, and comprehensive remedies are provided by the FLSA to remedy such violations. Those remedies include the possibility of recovering liquidated damages in an amount equal to the backpay and an award of attorney's fees if the Plaintiffs are successful. Because the FLSA provides an exclusive remedy for the violation of its terms, the Plaintiffs' claims pursuant to § 1983 must be dismissed. *See Jackson*, 73 F.3d at 63 (citing *Pennhurst State School & Hosp. v. Halderman*, 451 U.S. 1, 23, 101 S.Ct. 1531, 1543, 67 L.Ed.2d 694 (1981)).[31]

### IV. *Conclusion*

For the reasons set forth in this opinion, the Court makes the following findings: (1) both Madison County (through the Board of Supervisors and Sheriff Hopkins in his official capacity) and Hopkins individually are the joint employers of the Plaintiffs pursuant to the FLSA; (2) the Defendants may take advantage of the § 7(k) exemption if the facts of this case, as developed at trial, show that Madison County has adopted a work period of at least 7 but no more than 28 days for the Plaintiffs in this matter; (3) the De-

---

**31.** The Court notes that the dismissal of the Plaintiffs' § 1983 claims applies to both the due process and equal protection claims. With regard to the equal protection claims, Plaintiffs have presented no citations to any authority which would allow them to recover for a violation of alleged equal protection rights due to a failure to pay overtime in violation of the FLSA.

fendants may not take advantage of the fluctuating work week, as contemplated by 29 C.F.R. § 778.114, unless they can show that there was a "clear mutual understanding" between the parties that the Plaintiffs would receive a fixed salary for the hours worked by them, whether few or many, and that some maximum number of hours was contemplated in this agreement; (4) Plaintiffs are not entitled to summary judgment on their claim for liability under the FLSA, and Defendants may offer evidence to rebut the evidence of overtime work presented by the Plaintiffs; (5) with regard to Plaintiff Mary Mitchell Rushings, the Defendants will have the burden of proving at trial that her "primary duty" is the management of the Jail in order to invoke the FLSA exemption from overtime based upon her alleged status as an executive employee; (6) regarding the issues of willfulness and liquidated damages, the Court will determine these issues at trial and will make every effort to determine the willfulness issue [32] prior to requiring the parties to present proof concerning the actual overtime allegedly worked by each Plaintiff; (7) the claims for retaliation asserted by the Plaintiffs and as a counterclaim against Madison County by Hopkins should be dismissed; and (8) the Plaintiffs' claims pursuant to 42 U.S.C. § 1983 should be dismissed.

IT IS THEREFORE ORDERED that the Motion for Partial Summary Judgment filed by the Madison County Defendants [152–1] should be granted in part and denied in part.

IT IS FURTHER ORDERED that the Motion for Partial Summary Judgment filed by Third Party Defendant Jessie Hopkins [154–1] should be denied.

IT IS FURTHER ORDERED that the Motion for Partial Summary Judgment filed by the Plaintiffs [157–1] should be denied.

IT IS FURTHER ORDERED that the Notion to Strike filed by Third Party Defendant Jessie Hopkins [160–1] should be denied.

IT IS FURTHER ORDERED that the Motion for Leave to Exceed Page Limitations filed by the Madison County Defendants [172–1] should be granted.

---

**32.** As stated previously, a finding of willfulness would invoke a·corresponding 3–year statute of limitations, while a finding of no willfulness would invoke a 2–year statute of limitations. *See supra* at 507.