**In the Matter of MADISON COUNTY PROBATION OFFICERS' SALARIES.**

No. 48S00–9704–MF–239.

Supreme Court of Indiana.

June 26, 1997.

Kevin M. Eads, Anderson, for Madison County Council.

Patrick R. Ragains, Anderson, for Madison Co. Unified Courts and Madison Co. Circuit Court.

Gerald P. Shine, Jr., Anderson, for Madison County Auditor.

PER CURIAM.

### I. Background

The Madison County Unified Courts and the Madison Circuit Court ("Court System") sought an increase in the salaries paid to Madison County probation officers. The Madison County Council objected to the pay increase and refused to appropriate the funds. No agreement could be reached between the Court System and the County Council.

The Honorable Thomas Newman, Jr. and the Honorable Frederick R. Spencer serve respectively as the Chief Presiding Judge of the Unified Courts and the Circuit Court Judge in Madison County. On behalf of the Court System, they jointly issued an order of mandate of funds pursuant to Indiana Trial Rule 60.5(B). The order proposed new salaries for the twenty-five individuals who serve as probation officers within the Court System.

The effect of the order was to trigger the procedures found in Trial Rule 60.5(B) for resolving intra-county disputes about funding for the operation of the courts. The Court System notified the Indiana Supreme Court of the mandate order. We then appointed the Honorable Barbara Arnold Harcourt, Judge of the Rush Circuit Court, as special judge to preside over a trial on the merits of the mandate order.

A trial was held. In due course, Judge Harcourt issued a decree of mandate as provided by rule. The decree contained findings of fact and law. Special Judge Harcourt's decree sustained the order of mandate issued by the Court System.

Trial Rule 60.5 provides that the mandate decree of a special judge is subject to automatic review by this Court unless the respondent governmental subdivision (in this case, the Madison County Council) expressly waives such review. No waiver was made, so the clerk of the Court System certified a record of the proceedings below and sent it to this Court. A cause number was created on the docket of the Indiana Supreme Court and the record was filed. The Court then issued an order giving the parties an opportunity to brief the issues to be reviewed. Both sides responded. The Court met in conference to discuss the merits of the case and reached a consensus.

The decree of mandate is affirmed.

### II. Standard of Review

The general issues to be decided by the special judge in a mandate proceeding are whether the funds ordered paid are reasonably necessary for the operation of the court and any court-related functions and whether any specific fiscal or other governmental interests are so severely and adversely affected by the payment as to require the order to be set aside. *Morgan Circuit Court*

*v. Morgan County Council,* 550 N.E.2d 1303, 1304 (Ind.1990). Salaries of court employees fall within the mandate authority of a court and may be ordered paid at sufficient levels to attract and retain qualified persons in service. *Id.* Salaries being paid for comparable positions in both the private and public sectors are relevant. *Id.* The court need not wait to take action until the ability to operate has actually been impaired, but there must be a clear and present danger of impairment. *Id.*

■ When we review the mandate decree of the special judge, we do not ordinarily reevaluate the evidence and we will affirm the decree if there is substantial evidence of probative value to support the judgment. *In re Mandate of Funds for the Brown Circuit Court,* 507 N.E.2d 583, 584 (Ind.1987). On occasion, the profound public interest in an open and functioning judicial system and this Court's expertise in that area make it appropriate to weigh and evaluate the evidence in reviewing the conclusions of the special judge. *Id.* However, no additional weighing of the evidence is necessary in this case.

### III. Analysis

A little knowledge of history is helpful in understanding the issues raised in this case. The Indiana Legislature has determined that probation officers serve at the pleasure of the courts that appoint them and that the salaries of probation officers are to be fixed by the courts. IND.CODE § 11–13–1–1(c). However, the funds for the salaries are to be paid out of the county or city treasury by the county auditor or city controller. IND.CODE § 11–13–1–1(c).

The task of adopting rules and regulations prescribing minimum standards applicable to probation officers was assigned by the Legislature to the Board of Directors of the Judicial Conference of Indiana ("Board"). IND.CODE § 11–13–1–8(b). The Judicial Conference and its Board were themselves created by legislative enactments. IND.CODE §§ 33–13–14–1, and –2. Among the several purposes of the Judicial Conference and its Board are the education of Indiana's state court judges and the promotion of an open exchange of information regarding the operation of the judiciary. IND.CODE § 33–13–14–4(1), (2), (3). The Legislature also assigned to the Board the responsibility for "prescribing minimum standards concerning ... compensation of probation officers." IND.CODE § 11–13–1–8(b)(2).

Pursuant to that express authority, the Board adopted a Schedule of Minimum Salaries for Probation Officers on June 8, 1990. After additional study and consideration, a new schedule of minimum salaries was adopted by the Board on June 14, 1996 ("Salary Schedule"). The amounts to be paid to the probation officers of Madison County pursuant to the Court System's order of mandate, dated December 11, 1996, are the amounts established in the Salary Schedule. The Salary Schedule was admitted into evidence in the proceeding below, as was testimony about how it was prepared.

The record in this case reflects that the Board went to some effort to insure fairness in the minimum salaries established in the Salary Schedule. The figures contained in the Salary Schedule were the product of recommendations made by an advisory board consisting of twelve judges located in courts throughout the State of Indiana. The recommendations were developed by examining the authority and responsibilities of probation officers and the salaries paid for comparable work. The salaries paid to probation officers were compared to the salaries of those performing the same work in the federal judiciary, and to the salaries of law enforcement officers, school teachers, sheriffs, and department of correction employees. Before being adopted, the proposed Salary Schedule was sent to all county auditors in the State. Notice was given of public hearings on the proposed Salary Schedule. Those hearings were attended by officials from various counties throughout the State. At the conclusion of that process, the Board adopted the Salary Schedule.

Against that backdrop, we examine the contentions of the Madison County Council.

The Madison County Council argues that the Legislature violated the Indiana Constitution when it authorized the Board to establish minimum salary standards for probation

officers. Specifically, the County Council asserts that action offends Article 3, § 1 of the Indiana Constitution, which states:

The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial: and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided.

The County Council contends that because the Board is a judicial entity, it should be prohibited from establishing minimum probation officer salaries because the appropriation of public funds is normally the province of the Legislative department.

■ This argument lacks merit. It has long been the law of this State that the judiciary has the constitutional authority to set the salaries of probation officers. *Noble County Council v. State ex rel. Fifer*, 234 Ind. 172, 125 N.E.2d 709 (1955). In *Fifer*, a county council challenged a State trial court's establishment of the salary to be paid a probation officer. 234 Ind. at 178–79, 125 N.E.2d at 712–13. The Court in *Fifer* first noted the legislative authorization to so act, and then went on to state:

However, the authority of the court to appoint a probation officer, fix his salary and require a payment thereof, does not rest upon mere legislative fiat. The court has inherent and constitutional authority to employ necessary personnel with which to perform its inherent and constitutional functions and to fix the salary of such personnel, within reasonable standards, and to require the appropriation and payment therefor.

234 Ind. at 180, 125 N.E.2d at 714. It hardly need be repeated that the judiciary is an independent branch of the government constitutionally obligated to keep the courts open for the administration of justice. IND. CONST. art. 1, § 12. The power of the judiciary is, of necessity, coequal to its duties. *Knox County Council v. State ex rel. McCormick*, 217 Ind. 493, 498, 29 N.E.2d 405, 407. Because courts are constitutionally obligated to be open and because the operation of a probation office is a court-related function,

the courts have the corresponding constitutional power to pay probation officers at a level sufficient to attract and maintain qualified personnel. *Fifer*, 234 Ind. at 180–187, 125 N.E.2d at 714–717.

■ Therefore, no constitutional infirmity exists here. The authority ostensibly delegated by the Legislature is power that was already inherent in the judicial department. *Fifer*, 234 Ind. at 187, 125 N.E.2d at 717. Using a central judicial entity with special expertise to establish minimum salary levels for probation officers, rather than having separate determinations in each county, is more efficient and insures fairness and some degree of uniformity in the setting of salaries by trial courts statewide. Far from being an unconstitutional exercise of legislative authority, the process by which probation officers' salaries are determined in fact illustrates the coordinate branches of government acting cooperatively and responsibly.

■ The County Council next argues that the Salary Schedule was not promulgated in accordance with the procedures set out in Indiana Code Chapter 4–22–2 of the Administrative Adjudication Act. That Act prescribes the manner in which executive agencies must promulgate rules which, among other things, have "the effect of law." IND.CODE § 4–22–2–3(a), (b).

However, the Board—being part of the judicial branch of government—is not an "agency" as defined by the Act and therefore does not engage in rule-making as defined in Indiana Code § 4–22–2–3. Therefore, the Administrative Adjudication Act simply does not apply to the Board's discharge of its statutory obligations. Instead, the minimum salary determinations of the Board, if ordered by a trial court and opposed by a county or municipality, are subject to scrutiny through the Trial Rule 60.5 mandate procedure. That procedure includes a trial on the merits by a neutral arbiter and the opportunity for further review by this Court. These procedures provide a more than adequate means of check and balance on the Board's discharge of its obligation to establish minimum salaries for probation officers.

The County Council next argues that the Legislature may not authorize the Board to establish minimum salaries without also giving guidance on how to set the salaries. However, as already noted, the standards applied by the Board are built into the law governing Trial Rule 60.5 proceedings. In determining minimum salary levels for probation officers, the Board must consider what levels are reasonably necessary to attract and maintain qualified persons in service. *See, Morgan Circuit Court v. Morgan County Council,* 550 N.E.2d 1303, 1304. The salaries paid for comparable positions in both public and private sectors are relevant. *Id.*

The County Council further asserts that the term 'salary' should include the County's contribution to the probation officer's Public Employee Retirement Fund ("PERF"). The County Council cites no case law, statute, or regulation in support of this assertion. In any event, the special judge noted the county's PERF contribution in her findings of fact. It is therefore apparent this factor was taken into consideration by the special judge in determining whether the order of mandate was justified in this case. We see no error.

The Madison County Council finally asserts there was insufficient evidence of a clear and present danger of impairment to the operation of the Court System to warrant an order of mandate. *Citing, Morgan Circuit Court v. Morgan County Council,* 550 N.E.2d 1303, 1304 (Ind.1990). However, the special judge expressly found to the contrary and that conclusion finds substantial support in the record.

Prior to 1990, the average length of employment of probation officers was only twenty-two months because of the low salaries being paid. Since that time, the county has paid its probation officers at least the minimum salary established by the Judicial Conference and turnover has become very low. The chief probation officer for Madison County testified that adopting the minimum salary standard was "essential" to keeping the Court System staffed. He further testified that the failure to pay Madison County's probation officers at least the *minimum* salary established by the Board would result in a decrease in morale and increased departures of staff. A county neighboring Madison County is paying probation officers twenty percent above the minimum salary.

These facts sufficiently demonstrate the existence of a clear and present danger of impairment to the operation of a court-related function. The evidence supports a finding that the level of pay for probation officers in Madison County needed to be increased in order to attract and retain qualified persons in service. *Morgan Circuit Court v. Morgan County Council,* 550 N.E.2d 1303, 1304 (Ind.1990). As we have stated, the court need not wait to take action until the ability to operate the court has actually been impaired. *Id.*

## IV. Conclusion

The findings and conclusions of Special Judge Barbara Arnold Harcourt in her decree of mandate are affirmed in all respects.

All Justices concur.