Helen Jean BRADDOCK, Karen J. McCord, Mary M. Martin, and David M. Surratt, Plaintiffs,

v.

MADISON COUNTY, Indiana, Defendant.

No. IP 96–1233–C H/G.

United States District Court, S.D. Indiana, Indianapolis Division.

Nov. 30, 1998.

Arend J. Abel, Leagre, Chandler & Millard, Indianapolis, IN, for Plaintiffs.

David A. Gunter, Beers, Mallers, Backs & Salin, Fort Wayne, IN, for Defendant.

Wayne Uhl, Office of the Indiana Attorney General, Indianapolis, IN, for State.

FINDINGS OF FACT AND
CONCLUSIONS OF
LAW

HAMILTON, District Judge.

### Introduction

Three court reporters and a former bailiff with the Unified Courts of Madison County seek additional compensation from Madison County, Indiana, for hours the plaintiffs worked beyond the minimum scheduled 35 hours a week each was expected to work.

The case was tried to the court. Findings of fact and conclusions of law are set forth in this entry.

Plaintiffs seek relief under two radically different legal regimes: contract law and the federal Fair Labor Standards Act (FLSA). See 29 U.S.C. § 207 (FLSA overtime requirements). As explained below, plaintiffs have not shown that Madison County breached any contract with them. The root of contract law is enforcement of promises objectively manifested by the statements and conduct of the parties. Madison County never manifested any intention or promise to pay the plaintiffs cash for hours they worked in excess of 35 hours a week. Plaintiffs continued to work for years under that regime without any indication that the county intended to pay them for any of the hours in question here. Madison County did not breach its contracts with plaintiffs.

The federal Fair Labor Standards Act, however, was carefully designed to trump contracts and to give employees rights that they could not waive or contract away. Under the FLSA, the plaintiffs are entitled to some but not all of the relief they seek. All four plaintiffs are non-exempt employees who are eligible for overtime pay. All four plaintiffs worked overtime hours for which they have not been paid. The county's principal defense on the FLSA claims is that plaintiffs' employer is the Unified Courts rather than the county itself. Indiana has established a system of governmental checks and balances that divides authority over the administration of the courts in Madison County. In a nutshell, the judges of the courts control the plaintiffs' working hours while the Madison County Council controls the plaintiffs' compensation. Plaintiffs seek damages not from the courts, which are entitled to protection from liability for damages under the Eleventh Amendment as arms of the state government, but from only Madison County, which has defended itself by trying to blame the overtime violations on the judges.

Plaintiffs' claims for overtime pay under the FLSA depend on the relationship between hours worked and compensation. As explained below, the division of authority between the judges (over working hours) and

the County Council (over compensation) does not allow the County Council to avoid its responsibilities as an employer of these plaintiffs. The County Council had ample authority and opportunity to be able to prevent the overtime violations. Madison County is liable as an employer for those violations even though the judges might also have been able to prevent the violations.

Plaintiffs are entitled to overtime wages from the County Council, but they are not entitled to relief under the FLSA for so-called "gap time," hours they worked in excess of 35 schedule hours a week but below the 40 hour overtime threshold of the FLSA. Plaintiffs also are not entitled to relief under the Indiana Wage Claim Statute, Ind.Code § 22–2–5–1. They are all salaried employees who are entitled to overtime under the FLSA and are therefore excluded from the statute by Ind.Code § 22–2–5–1.1.

### Findings of Fact [1]

Plaintiffs Helen Braddock, Karen J. McCord, and Mary M. Martin are all court reporters who work with judges of the Unified Courts of Madison County, Indiana. Plaintiff Helen Jean Braddock has worked as a court reporter for Superior Court 1 since 1981. Plaintiff Karen J. McCord has worked as a court reporter in Superior Court Division 1 since June 1987. From February 1983 until June 1987, McCord worked in the Court Administrator's office. Plaintiff Mary M. Martin has worked as a court reporter for County Court 2 since January 1, 1981. The three court reporters' duties include running audio recording equipment in court, keeping written records of court proceedings, filing and docketing papers filed in cases before the respective courts, and performing some secretarial duties for the judges of their respective courts. When the court reporters have also prepared transcripts, they have performed that work on their own time and have been compensated separately for that work.

Plaintiff David M. Surratt worked as a bailiff in Superior Court 1 from December 7, 1986, until March 31, 1996. His duties included organizing and updating files each morning for cases scheduled to be heard, managing the court calendar, preparing periodic reports on the court's business, and shepherding jurors in the court's trials.

Plaintiffs were hired by the judges of their respective courts. Each judge has sole power to fire the employees who work under that judge's supervision. See Ind.Code § 33–5–33.1–8 (superior court may appoint bailiffs, court reporters, and other personnel who "shall perform such duties as are prescribed by the court" and "serve at the pleasure of the court"); Ind.Code § 33–10.5–8–2(b) & –3(b) (judge of county court shall appoint a bailiff and reporter, and county shall pay salary of bailiff and reporter). Each judge has also controlled each plaintiff's working schedule, including whether the plaintiff has been permitted to work more than 35 or more than 40 hours a week.

The judges of the Unified Courts have no direct control over the compensation of the plaintiffs. Instead, all funds used to operate the Unified Courts, including paying compensation to the plaintiffs, are appropriated by the Madison County Council, the fiscal body of Madison County. The County Council determines the number of positions of court reporters and bailiffs in the Unified Courts, and sets the classification for each position and the annual compensation for each position.

The County Council exercises its budgetary power by reviewing budget requests submitted by officials of the Unified Courts. The Council decides on matters as specific as adding a single part-time employee to the courts' staff. For example, the County Council approved a request by Judge Thomas Clem and appropriated funds to hire some part-time employees to help with his court's workload. See Tr. 262–63; 266–67. The County Council has rejected requests by the Unified Courts to increase staffing. For example, in the 1997 budget hearings, the County Council rejected a request for an additional secretarial position for the courts.

---

1. Especially because some of the salient "facts" in this case are aspects of Indiana law governing court administration, including supervision and payment of court staff, the substance rather than the court's label should control whether a point is treated as a finding of fact or a conclusion of law.

The County Council also decides whether to appropriate money to pay overtime compensation for employees of the governmental entities it funds. For example, the County Council has approved specific requests for appropriations for overtime pay for employees of the Sheriff's Department and the County Highway Department. The County Council rejected in 1997 a request for overtime compensation for employees of the Unified Courts. The County Council has also rejected more specific requests for special appropriations for overtime for court employees. The County Council has never approved payment of overtime compensation for court staff.

At all relevant times, plaintiffs Braddock, McCord, Martin, and Surratt were paid a total yearly compensation based upon a 35-hour week for 52 weeks per year. That compensation for each plaintiff's specific position was determined by the County Council in its annual budgeting process.

Paychecks for plaintiffs and other court staff are issued and signed by the Auditor of Madison County. The Auditor may not issue a warrant (equivalent to a check) without identifying the specific appropriation item against which it is drawn, and it is a crime for the Auditor knowingly to permit an item of appropriation to be overdrawn. Ind.Code § 36-2-9-13.

The Madison County government has adopted a general personnel system and policies that apply to employees of county agencies and offices such as the County Auditor or the County Highway Department. The judges of the Unified Courts have insisted that the employees who work directly with them (including plaintiffs) are not subject to those more general personnel policies. The judges have essentially "borrowed" some of the more general county personnel policies, however, by adopting or at least following general county personnel policies on matters such as holiday and vacation schedules, sick leave, and the like, for the plaintiffs and other employees who work most closely with the judges.

During the relevant time periods here, the standard work week for employees of county agencies in Madison County has been 8:00 a.m. to 4:00 p.m., five days a week, with one hour off for lunch. Before 1997, Madison County treated that schedule as a 35-hour week, but in 1997 the County began treating the schedule as a 40-hour week for certain record-keeping purposes by counting lunch hours as part of the work week. The Unified Courts made the same change. See Pl. Exs. 17 & 18. The change in record-keeping did not affect actual working hours of employees.

At all relevant times, all four plaintiffs understood that they were required to work 35 hours a week to earn the annual compensation appropriated for their respective positions by the Madison County Council. Their understandings were based on statements by the judges they have worked with directly and by the court administrator, on the general practices among court employees, and on the payroll records submitted to obtain their paychecks.

Court employees, including plaintiffs, had their compensation determined on an annual basis, but if a plaintiff missed work and did not have accumulated vacation, sick leave, or compensatory time available to cover the absence, the plaintiff would not have been paid for the hours missed.

At all relevant times, from the beginning of plaintiffs' work with the courts, all four plaintiffs frequently worked more than 35 hours in a week. It was not unusual for these plaintiffs to work more than 40 hours a week (excluding lunch hours). The judges who supervised plaintiffs either explicitly required the additional hours or simply made it clear that the additional work was expected so that the courts could keep up with their growing caseloads.

All four plaintiffs worked out informal arrangements with the judges for whom they worked for a sort of compensatory time based on their hours worked in excess of 35 hours a week. The records prepared by plaintiffs show that all four used substantial amounts of compensatory time over the years. During the relevant period, however, all plaintiffs used fewer hours of compensatory leave than they worked in the so-called "gap time" hours between 35 and 40 hours a week, plus so-called exempt hours. No plaintiff took compensatory time to which he or she was not entitled.

The informal compensatory time arrangements had only limited effectiveness in reducing overall hours. As Judge Clem testified, when the courts' workload grew so that employees needed to work more than 35 hours a week to keep up with it, using compensatory time became a self-defeating proposition. When a staff member uses compensatory time, the court's workload does not slacken, so more work piles up during the staff member's absence. When employees have left employment with the Unified Courts and have accumulated unused compensatory time, the County Council has appropriated funds specifically to compensate the departing employee for the unused compensatory time.

Plaintiffs compiled and submitted to this court detailed records of their actual hours worked. Those records cover many years. Although cross-examination identified a number of errors in those records, after correction and adjustment for the identified errors, the records appear to the court to be the most reliable information available about the actual hours these plaintiffs worked during the years in question. The evidence shows that the plaintiffs worked the hours in excess of 40 hours a week without additional cash compensation as set forth below. The dollar amounts reflect the amounts unpaid for those hours based on plaintiffs' annual compensation divided by a 35–hour work week, times 150 percent for time-and-a-half overtime compensation:[2]

Karen McCord

| Year | Hours >40/week | Dollars |
|---|---|---|
| 1986 | 15 | 207.52 |
| 1987 | 52.0 | 753.75 |
| 1988 | 68.5 | 1,020.85 |
| 1989 | 35.75 | 547.70 |
| 1990 | 27.5 | 439.47 |
| 1991 | 28.25 | 451.45 |
| 1992 | 89.0 | 1,494.85 |
| 1993 | 40.0 | 671.84 |
| 1994 | 31.5 | 555.68 |
| 1995 | 71.5 | 1,311.96 |
| 1996 | 87.75 | 1,625.86 |

| McCord Total | | $9,080.93 |
|---|---|---|

Mary Martin

| Year | Hours >40/week | Dollars |
|---|---|---|
| 1986 | 25.5 | 352.79 |
| 1987 | 83.0 | 1,203.10 |
| 1988 | 21.0 | 312.96 |
| 1989 | 8.0 | 122.56 |
| 1990 | 9.5 | 151.82 |
| 1991 | 19.5 | 311.62 |
| 1992 | 9.5 | 159.56 |
| 1993 | 9.0 | 151.17 |
| 1994 | 38.5 | 679.17 |
| 1995 | 60.5 | 1,110.12 |
| 1996 | 40.0 | 741.13 |

| Martin Total | | $5,296.00 |
|---|---|---|

David Surratt

| Year | Hours >40/week | Dollars |
|---|---|---|
| 1991 | 11.5 | 166.81 |
| 1992 | 26.0 | 398.58 |
| 1993 | 26.5 | 406.25 |
| 1994 | 10.5 | 168.92 |
| 1995 | 20.5 | 343.08 |

| Surratt Total | | $1,483.64 |
|---|---|---|

Helen Jean Braddock

| Year | Hours >40/week | Dollars |
|---|---|---|
| 1991 | 32.0 | 511.38 |
| 1992 | 34.75 | 583.67 |
| 1993 | 47.0 | 789.42 |
| 1994 | 28.8 | 507.17 |
| 1995 | 89.0 | 1,633.07 |
| 1996 | 9.25 | 171.39 |

| Braddock Total | | $4,196.10 |
|---|---|---|

These calculations do not include any retirement contributions in the calculation of each plaintiff's rate of compensation.

The Auditor of Madison County has never paid plaintiffs any additional cash for hours worked in excess of 35 hours a week or in excess of 40 hours a week. Before 1995, no plaintiff made any formal effort to request payment for hours in excess of 35 or 40 hours a week.

During or shortly before 1995, judges of the Unified Courts became aware through

2. The court has used a 35–hour week to calculate the appropriate hourly rate because the plaintiffs were entitled to compensatory time for any hours worked in excess of 35 hours a week.

statewide continuing education for Indiana judges that there was an issue as to whether court employees are entitled to overtime. On September 21, 1995, Judge Dennis Carroll wrote to the staff of the Indiana Judicial Center seeking advice as to whether court reporters and bailiffs were entitled to additional compensation for hours worked in excess of 35 hours a week. See Def. Ex. F. The staff of the Indiana Judicial Center responded with a letter dated October 10, 1995, advising Judge Carroll that, among other things, court reporters and bailiffs would be entitled to time-and-a-half compensation for hours in excess of 40 hours a week, but that the FLSA would not require overtime or compensatory time for hours above 35 but less than 40 hours a week. See Def. Ex. G. After Judge Carroll concluded that the plaintiffs who worked in his court should be compensated for overtime work, he certified several payroll vouchers for such claims. Pl. Exs. 11–14. Judge Clem submitted a similar request for plaintiff Martin. Pl.Ex. 15. The County Auditor refused to honor those claims because there were no funds appropriated to pay them, and because no court had exercised its mandate power to order such payment. The Madison County Council has never appropriated funds for overtime pay for court staff. The plaintiffs have never received any payment for work above and beyond 35 hours a week or 40 hours a week. All plaintiffs continued to work for the Unified Courts without any promise on the part of Madison County to pay for additional hours.

The plaintiffs' employment has not been governed by written contracts. The personnel manual for county employees has not been applied to court employees and does not provide any factual basis for determining the terms of plaintiffs' employment contracts. The County Council has never made any promise to any of the plaintiffs to pay them additional amounts for work performed in excess of 35 or 40 hours a week. After judges and employees of the Unified Courts raised the issue of overtime pay for court employees under the federal FLSA, an informal meeting was held in 1995 that included Judge Dennis Carroll, plaintiffs McCord and Surratt, one or two members of the County Council, and an attorney for the County Council. The attorney for the County Council expressed the view that the plaintiffs were entitled to overtime pay under the FLSA and assured plaintiffs that they would be paid under the FLSA. In 1995, the attorney advised the Madison County Council that he believed the county was legally obliged to pay court employees for overtime worked. The County Council never followed through on the attorney's advice or his statement in the meeting with McCord, Surratt, and Judge Carroll.

The judges of the Unified Courts have the authority under the Indiana Constitution to "mandate" the Madison County Council to pay funds that are necessary to operate the courts, including staff salaries and other expenses. See *In re Madison County Probation Officers' Salaries*, 682 N.E.2d 498, 501 (Ind.1997). The judges of the Unified Courts have not exercised their mandate authority with respect to the plaintiffs' claims for overtime compensation.

Conclusions of Law

I. Contract Claims

A comprehensive and meaningful definition of a "contract" is elusive. See 1 Corbin on Contracts § 1.3 (rev.ed.1993). At its core and in general, however, the essence of contract law is the enforcement of promises where the parties have manifested their assent to a mutual exchange of consideration. See Restatement (Second) of Contracts §§ 17, 3 (1981); *Trustees of Dartmouth College v. Woodward*, 17 U.S. (4 Wheat.) 518, 656, 4 L.Ed. 629 (1819) (opinion of Washington, J.) ("What is a contract? It may be defined to be a transaction between two or more persons, in which each party comes under an obligation to the other, and each reciprocally acquires a right to whatever is promised by the other."); *Terre Haute Regional Hosp., Inc. v. El–Issa*, 470 N.E.2d 1371, 1377 (Ind.App.1984) (hospital bylaws governing medical staff could be enforceable contractual obligations where hospital manifested intent to be bound and all parties incurred obligations). To put it simply, contract law should not enforce a promise

against a party who has not made the promise, whether explicitly or implicitly.

■ All the plaintiffs have had employment contracts with Madison County. Plaintiffs have performed services over the years, and the Auditor of Madison County has paid them for those services. Plaintiffs claim that Madison County for many years breached its contracts with them by failing to pay them for hours worked in excess of 35 hours a week. The plaintiffs did not have written employment contracts that spelled out the terms of their employment. The principal issue here is whether Madison County contracted to pay plaintiffs additional compensation for hours in excess of 35 hours a week. The evidence plainly shows that the county never contracted to pay such additional compensation.

First, there was never any explicit promise on the part of the county to pay additional compensation. The best evidence for plaintiffs on this point was the 1995 statement of the attorney for the County Council, but that statement amounted to no more than an expression of the attorney's expectation that the County Council would comply with its obligations under the Fair Labor Standards Act. It fell far short of a promise to pay additional compensation as a matter of contract, even assuming that an oral promise by an attorney for the County Council could bind the County Council.

Second, there was never any implicit promise by the county to pay additional compensation, nor did plaintiffs ever act as if such a promise had been made. The clearest evidence of the critical term of the employment contracts is the parties' actual conduct over many years. See, e.g., *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1275 (4th Cir.1996) (relying on course of conduct to determine that county employer had not agreed to pay plaintiffs additional compensation for hours in excess of weekly minimum requirements); *Zoltek v. Safelite Glass Corp.*, 884 F.Supp. 283, 286 (N.D.Ill.1995) (where employee was aware of employer's practice of paying fixed salary and continued employment for several years, employee manifested acceptance of that practice as term of employment contract); *DeHaan v.*

*DeHaan*, 572 N.E.2d 1315, 1323 (Ind.App. 1991) (in interpreting ambiguous contract, parties' conduct in connection with the contract may be considered, so that a court will apply the construction the parties have given to an ambiguous contract); see generally *Williams v. Jacksonville Terminal Co.*, 315 U.S. 386, 398, 62 S.Ct. 659, 86 L.Ed. 914 (1942) (in FLSA case, employees implicitly agreed to new compensation arrangement by continuing to work under the arrangement, even though they were protesting the new arrangement). The county never acted as if it meant to pay for additional hours. The plaintiffs all continued to work for years according to those terms and without receiving any substantial assurance that the county intended to pay for additional hours. That adds up to powerful evidence that the mutually agreed terms of the plaintiffs' employment contracts did not include additional pay for hours in excess of 35 hours a week.

In *Zoltek v. Safelite Glass*, the court noted that if an employee "contemporaneously protests, there is no implied agreement to the condition." 884 F.Supp. at 286, citing *Johnson v. City of Columbia*, 949 F.2d 127, 131 (4th Cir.1991); *Beebe v. United States*, 226 Ct.Cl. 308, 640 F.2d 1283, 1291 (Ct.Cl.1981). The plaintiffs' occasional complaints about the failure to pay them for hours in excess of 35 hours a week do not entitle them to take advantage of any such exception. In *Johnson*, the plaintiff had protested the employer's change of policy and quickly filed suit. 949 F.2d at 130. In *Beebe*, the plaintiffs had similarly responded to an employer's change of policy by protesting immediately and by constantly seeking relief. 640 F.2d at 1291. The reasoning in *Johnson* and *Beebe* does not extend to this situation, where the employer did not change any relevant policy and the employees took no action for many years. This case is more similar to *Bodie v. City of Columbia*, 934 F.2d 561, 566 (4th Cir.1991), where the employee was held to have acquiesced in a change of policy by continuing to work and protesting the policy only after he retired, and to *Williams v. Jacksonville Terminal*, where the Supreme Court held that red-caps at a railroad terminal had implicitly agreed to a change in compensation

arrangements by continuing to work under the new arrangements even though they were complaining and protesting the change. 315 U.S. at 398, 62 S.Ct. 659.

■ For these reasons, Madison County has not breached its contracts with the plaintiffs by failing to pay additional cash for hours worked in excess of 35 hours a week. Another critical term of all four plaintiffs' employment contracts, however, was that they could take compensatory time for hours worked in excess of 35 hours a week. Arrangements for compensatory time needed to be worked out to the satisfaction of the judges. Despite the obvious difficulties with compensatory time and the practical limits on how much could be taken, all four plaintiffs have taken substantial amounts of compensatory time, although not enough to account for all of their "gap-time" hours between 35 and 40 hours a week over the relevant years. The compensatory time arrangements were quite informal, but the same consistent course of conduct over many years shows that the county implicitly agreed to permit plaintiffs to use compensatory time for those hours. The evidence also shows that the county has agreed to pay departing employees for the value of accumulated and un-used compensatory time when they leave county employment. The arrangements for compensatory time have been so informal that they do not satisfy the FLSA's special provision that allows public employers to provide compensatory time in lieu of overtime pay. See 29 U.S.C. § 207(o).

## II. Fair Labor Standards Act Claims

■ Plaintiffs' claims under the federal Fair Labor Standards Act stand on a foundation entirely different from a contract, one that has little to do with the enforcement of a mutually agreed exchange of promises and performance. The core obligations of the FLSA require payment of a minimum hourly wage and payment of time-and-a-half wages for overtime, which in most cases are those hours above 40 hours a week. Because employers often have much greater bargaining power than employees, Congress made the FLSA's provisions mandatory, so that they are not subject to negotiation or bargaining between employers and employees. *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 706–07, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). Congress was careful in writing the FLSA to avoid tying those obligations to contracts between employers and employees. The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours. *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Id.* at 740, 101 S.Ct. 1437 (citations omitted).

### A. Plaintiffs are Employees of Madison County for FLSA Purposes

Madison County agrees that it constitutes both an "enterprise" and an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(r) & (s). [3] In addition, the FLSA has applied to county employees since the Supreme Court decided *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), which overruled *National League of Cities v. Usery,* 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). Pursuant to the 1985 amendments to the FLSA, state and local governments need not pay damages for FLSA violations occurring before April 15, 1986. See *Rhinebarger v. Orr,* 657 F.Supp. 1113, 1115 (S.D.Ind.1987), aff'd, 839 F.2d 387, 390 (7th Cir.1988). State employers are covered by the text of the FLSA, but the federal courts of appeals have held since *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), that the Eleventh Amendment bars damages claims under the FLSA against state governments in federal courts. See, e.g., *Abril v. Com. of Virginia,* 145 F.3d 182, 191 (4th Cir.1998); *Powell v. Florida,* 132 F.3d 677, 678 (11th Cir.1998) (collecting cases); *Mills v. Maine,*

**3.** Cases in the Unified Courts of Madison County include parties from other states.

118 F.3d 37, 49 (1st Cir.1997); see also *Mueller v. Thompson*, 133 F.3d 1063, 1064 (7th Cir.1998) (assuming Seminole Tribe bars such claims so long as state has not waived Eleventh Amendment immunity).

All four plaintiffs came forward with evidence showing that they worked hours in excess of 40 hours a week for which they were not paid overtime. See tables at 1103, above. Madison County has not argued that the plaintiffs are exempt from overtime, nor does the evidence support any other exception or defense under the FLSA.

Instead, Madison County's principal defense to the FLSA claims is that the county was not an "employer" of these plaintiffs for purposes of the FLSA. The county contends that the judges of the Unified Courts controlled plaintiffs' hours and that the county had no control over those hours.

■ The FLSA defines "employer" based on the "economic reality" of the employment situation. An entity's control over relevant aspects of plaintiff's employment is used to determine whether an entity is an employer under the FLSA. See *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 966 (6th Cir. 1991); *Dole v. Simpson*, 784 F.Supp. 538, 545 (S.D.Ind.1991); see generally *Falk v. Brennan*, 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973) (management company's "managerial responsibilities" that gave the defendant partners "substantial control of the terms and conditions of the work" of the employees showed that partners were employers for purposes of the FLSA).

■ Factors relevant to the analysis of the "economic reality" include: (1) the power to hire and fire the employee; (2) supervision and control of the employee's work schedule or conditions of employment; (3) determining the rate and method of payment for the hours worked; and (4) maintenance of employment records. See *Barfield v. Madison County*, 984 F.Supp. 491, 497 (S.D.Miss. 1997); *Brickey v. County of Smyth*, 944 F.Supp. 1310, 1315 (W.D.Va.1996). The central inquiry under the FLSA is whether the defendant had sufficient control over those aspects of the employment relationship that gave rise to the alleged violation. *Dole v.*

*Simpson*, 784 F.Supp. at 545, citing *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir.1984). The defendant's control over the relevant aspects of employment need not be exclusive. *Elliott Travel & Tours*, 942 F.2d at 966. For purposes of the FLSA, an employee may have more than one employer, as *Falk v. Brennan* makes clear. See 414 U.S. at 195, 94 S.Ct. 427 (owners of apartment complexes and partners of real estate management company were all employers of same employees for FLSA purposes).

There is no doubt that the Unified Courts are an employer of these plaintiffs. The judges of the courts had the power to hire and fire the plaintiffs and supervised and controlled their work schedule and conditions of employment. The issue here is whether the Madison County Council also exercised sufficient control over the relevant aspects of plaintiffs' employment so that it should also be treated as an employer.

■ The overtime violations alleged here depend upon both wage payments and hours of work. It is, after all, the relationship between compensation and work schedule that the FLSA's overtime provision governs. Under Indiana law, the County Council is the fiscal body that appropriates money to pay the plaintiffs for their services. (The Auditor then pays plaintiffs with duly appropriated funds). The evidence here shows that the County Council has controlled plaintiffs' compensation. The County Council set the annual level of compensation for each position with the Unified Courts. The County Council also had the authority to appropriate additional funds for overtime. It has done so for other agencies it funds, including the Sheriff's Department and the County Highway Department. When the Unified Courts sought additional funds for overtime, however, the County Council rejected the requests.

According to plaintiffs and the judges who supervise them, the root of the problem here is that staffing for the courts simply has not been great enough to keep up with the courts' growing caseloads. For that reason compensatory time has not been a satisfactory solution to deal with plaintiffs' overtime. To the extent that overtime is the result of higher caseloads rather than specific and un-

usual needs, compensatory time merely reduces an already insufficient staff, so that the staff falls still farther behind.

This court is not in a position to evaluate the actual need for additional staff for these courts. That need is not relevant for purposes of the FLSA, which requires overtime compensation if the employee is "suffered" or "permitted" to work. In terms of allocating responsibility for the FLSA violations, there is no doubt on this evidence that the County Council also controlled the levels of staffing in the Unified Courts. The County Council decided exactly how many positions it would fund in the Unified Courts and exactly how much the employee in each position would be paid. When workload seemed sufficient to warrant additional hiring, the County Council controlled that decision. For example, the County Council appropriated funds for part-time positions to help Judge Clem deal with additional caseload.

It is true that only the judges of the Unified Courts had the authority to order plaintiffs to go home, i.e., to no longer "suffer or permit" the plaintiffs to work. See 29 U.S.C. § 203(g) (defining "employ"). If a plaintiff were complaining about an isolated instance of unpaid overtime, the county's reliance on that fact might carry more weight. It would be odd for the County Council to try to tell a court employee to leave work at a particular time on a particular day. That is not this case. These plaintiffs have shown a consistent pattern of FLSA overtime violations over many years. The County Council's control over (a) plaintiffs' compensation, (b) overtime appropriations, and (c) overall staffing levels is sufficient to treat Madison County as plaintiffs' employer. Those powers gave the county sufficient control over those aspects of plaintiffs' employment that gave rise to the consistent pattern of violations over the years. Accord, *Barfield v. Madison County*, 984 F.Supp. at 498 (county was joint employer of sheriff's deputies where county board of supervisors set budget for sheriff's department and rejected sheriff's annual budget requests for overtime).

*Madison County* relies here on several cases deciding that county governments should not be deemed employers of employees of agencies funded by the county governments. See *Welch v. Laney*, 57 F.3d 1004 (11th Cir.1995); *Brickey v. County of Smyth*, 944 F.Supp. 1310, 1315–17 (W.D.Va.1996); and *Keenan v. Allan*, 889 F.Supp. 1320, 1381 (E.D.Wash.1995), aff'd, 91 F.3d 1275 (9th Cir. 1996). In *Welch v. Laney*, the Eleventh Circuit held, for purposes of the Equal Pay Act, which uses the FLSA definitions, that county commissioners were not employers of a dispatcher in the sheriff's department. The court reasoned that the county commissioners exercised no direct control over the dispatcher, except for setting the salary for the plaintiff's employment classification, and had no power to hire or fire her. 57 F.3d at 1011. *Brickey* was an FLSA overtime case brought by sheriff's deputies. The district court held that the county was not their employer for purposes of the FLSA because the sheriff had exclusive authority to hire and fire, as well as to control work schedules and to determine the rate and method of payment. 944 F.Supp. at 1315–17. In *Keenan v. Allan*, a state court administrator asserted numerous claims, including claims under the FLSA for failure to pay overtime. The district court held that the county and its commissioners were not the plaintiff's employer because their only involvement in plaintiff's employment was to appropriate funds for the state court. 889 F.Supp. at 1381.

The plaintiffs in this case have shown that the Madison County Council exercised a substantially greater and more specific degree of control over their compensation and overtime than is evident from the courts' opinions in *Welch, Brickey,* and *Keenan.* More analogous here is the recent decision of *Barfield v. Madison County*, 984 F.Supp. 491 (involving Madison County, Mississippi, coincidentally). One issue there was whether the county could be held liable as an employer of employees in the sheriff's department. The sheriff who directly supervised the plaintiffs had repeatedly asked the county government to budget funds for overtime, but his requests had been refused. Individual members of the county board of supervisors told the sheriff that the county "was not going to

pay overtime." That is similar to this defendant's responses to requests for overtime pay. The district court held in *Barfield* that the county government could be treated as an employer for purposes of the FLSA. 984 F.Supp. at 498–99.

Madison County has made much of the fact that the judges of the Unified Courts have the power under Indiana law to mandate additional funding so long as the additional funding is "necessary." See Ind. Trial R. 60.5 (governing court mandates of funds); *In re Madison County Probation Officers' Salaries*, 682 N.E.2d 498, 502 (Ind.1997) (affirming mandate increasing salaries for probation officers); *Kramer v. Hancock County Court*, 448 N.E.2d 1190, 1191 (Ind.1983) (affirming mandate to county auditor to pay three court employees a total of $1,240 per year more than county council had appropriated). The mandate power applies where the court finds that funds beyond those appropriated by the county government are "reasonably necessary for the operations of the court," which ordinarily involves at least a "clear and present danger of impairment" of court operations. *In re Madison County Probation Officers' Salaries*, 682 N.E.2d at 499, 502.

█ The judges' mandate power does not defeat plaintiffs' claims against the county itself. As a general rule, the fact that another employer might also have been able to prevent the violation of the FLSA does not insulate a defendant employer from liability. The county's theory seems to be that it could avoid liability for a violation of the FLSA by tossing this budgetary hot potato back to the judges. The judges had several options available to them: (1) to take action so that they would no longer, in the words of the FLSA, "suffer or permit" plaintiffs to work overtime hours, see 29 U.S.C. § 203(g); or (2) to seek an emergency supplemental appropriation to pay plaintiffs for overtime

hours; or (3) to mandate the County Council to appropriate funds for overtime payments.

█ The judges did none of those things. As a result of the stand-off between the judges and the County Council, the violations of plaintiffs' rights under the FLSA continued. For purposes of the FLSA, it does not matter whether the overtime was, for purposes of Indiana mandate law, "necessary" or not. Under the FLSA the employee is entitled to overtime pay so long as the employer has "suffered" or "permitted" the employee to work. Moreover, the FLSA does not permit evasion of its requirements by dividing control over the relevant aspects of employment such that there is no suable employer, especially where an entity that controls at least one aspect of the employment has some knowledge of another entity's actions with respect to other aspects of the employment. The County Council in this case had the power to prevent the violations and did not take action to prevent them. That is sufficient to hold the county liable as plaintiffs' employer, even if another employer might also have had the power to prevent the violations. Because the county has been plaintiffs' employer, because no exemptions apply, and because plaintiffs have not been paid overtime compensation as required by the FLSA, plaintiffs are entitled to overtime compensation for hours worked in excess of 40 hours a week.[4]

### B. The "Gap Time" Issue

Plaintiffs also rely on the FLSA to demand straight-time pay for so-called "gap time." Plaintiffs were required to work 35 hours a week to earn the compensation appropriated by the County Council. Plaintiffs contend that because their compensation was based on a 35–hour week, the FLSA entitles them to straight time wages for hours worked in excess of 35 hours a week but less than 40 hours a week. They rely primarily on *La-*

---

4. The court need not reach plaintiffs' suggestions that judges of the Superior Court may be county officers, at least for purposes of the FLSA. Cf. *Kelly v. Municipal Courts of Marion County*, 97 F.3d 902, 908 (7th Cir.1996) (judge of Marion Municipal Court was state officer entitled to immunity under Eleventh Amendment when sued in official capacity for alleged violation of court employee's constitutional rights); *Lake County Juvenile Court v. Swanson*, 671 N.E.2d 429, 434–35 (Ind.App.1996) (judge of Lake County Juvenile Court was state officer and therefore was not a "person" under 42 U.S.C. § 1983 when sued by parents of juvenile placed in detention facility).

*mon v. City of Shawnee,* 754 F.Supp. 1518 (D.Kan.1991), *aff'd in relevant part,* 972 F.2d 1145, 1155 (10th Cir.1992). Madison County relies on *Monahan v. County of Chesterfield,* 95 F.3d 1263 (4th Cir.1996), to argue that the FLSA does not require payment for "gap time" so long as the plaintiffs' actual compensation for a 40–hour week provided average hourly wages above the applicable minimum wage.

The most thorough and persuasive discussion of this "gap time" issue appears in *Monahan.* In that case the plaintiffs were police officers whose regular schedules called for 135 hours of work for a 24–day cycle. (The FLSA allows law enforcement and fire-fighting agencies to use such special schedules because of the unusual demands on employees' time. 29 U.S.C. § 207(k); 95 F.3d at 1265–66. Under the FLSA, the overtime threshold for a 24–day work cycle is 147 hours. See 29 C.F.R. § 553.230.) The officers often worked more than 135 hours without any additional compensation, but they were paid overtime for their hours in excess of 147 hours. They sued under the FLSA for the "gap time" between 135 hours and 147 hours per 24–day cycle. The court's analysis is equally applicable to the more standard 40–hour schedule.

The district court in *Monahan* had granted summary judgment in favor of the plaintiffs, relying on Department of Labor regulations, especially 29 C.F.R. §§ 778.315 and 778.317. The Fourth Circuit reversed and directed entry of judgment in favor of the defendant employer:

> [W]e hold that if the mutually agreed upon terms of an employment agreement do not violate the FLSA's minimum wage/maximum hour mandates and provide compensation for all nonovertime hours up to the overtime threshold, there can be no viable claim for straight gap time under the FLSA if all hours worked above the threshold have been properly compensated at a proper overtime rate.

95 F.3d at 1273. The Fourth Circuit found it was undisputed that the officers knew their employer did not intend to pay them any extra cash for hours worked in excess of 135 hours but less than 147 hours per cycle. *Id.*

at 1273–75. Because the officers' salaries exceeded the FLSA's minimum wage requirements whether the officers worked 135 or 147 hours per cycle, the Fourth Circuit held that the FLSA did not entitle the officers to any additional hourly compensation for those "gap time" hours between 135 and 147 hours per cycle. The FLSA required only (a) that the minimum wage be paid for those hours up to 147 hours per cycle, and (b) that overtime be paid for hours in excess of 147 hours per cycle. Because the employer complied with those requirements in *Monahan,* the officers' FLSA claim for straight time pay for gap time was rejected. To the extent the officers were unhappy with the terms of their employment, as thus interpreted, they were left to the devices of contract law.

The Fourth Circuit rejected the officers' reliance on 29 C.F.R. § 778.317, entitled "Agreements not to pay for certain nonovertime hours." The regulation states:

> An agreement not to compensate employees for certain nonovertime hours stands on no better footing since it would have the same effect of diminishing the employee's total overtime compensation. An agreement, for example, to pay an employee whose maximum hours standard for the particular workweek is 40 hours, $5 an hour for the first 35 hours, nothing for hours between 35 and 40 and $7.50 an hour for the hours in excess of 40 would not meet the overtime requirements of the Act. Under the principles set forth in 778.315, the employee would have to be paid $25 for the 5 hours worked between 35 and 40 before any sums ostensibly paid for overtime could be credited toward overtime compensation due under the Act. Unless the employee is first paid $5 for each nonovertime hour worked, the $7.50 per hour payment purportedly for overtime hours is not in fact an overtime payment.

The Fourth Circuit found that the regulation did not apply because it construed the parties' contract not as an agreement not to pay for certain hours, but as an agreement to pay a fixed salary for any and all hours up to the overtime threshold. 95 F.3d at 1278.[5]

In *Lamon,* the case relied upon by plaintiffs here, the plaintiffs were police officers

**5.** The Fourth Circuit considered separately "gap time" claims for pay periods in which the em-

ployee worked and was paid for actual overtime hours and claims for pay periods in which the

whose employer used a 28–day cycle for FLSA purposes. The threshold for overtime in a 28–day cycle is 171 hours. 29 C.F.R. § 553.230. The officers were scheduled to work 160 hours per 28–day cycle, and the employer began paying overtime for work in excess of 160 hours, although that was below the FLSA threshold. See 972 F.2d at 1148–49. The officers argued, however, that they were entitled to additional compensation for their meal periods because they were not "completely relieved from duty" during meals, but were required to remain in contact with the dispatcher and to be available for duty if needed. See 754 F.Supp. at 1521, citing 29 C.F.R. § 553.223. A jury ruled that the officers were entitled to be compensated for meal periods. The issue therefore became the rate of compensation for the meal periods. Counting the meal periods as work time apparently would not have put the officers over the 171 hours per cycle overtime threshold. See 972 F.2d at 1155 (each plaintiff took no more than 10 hours of meal periods per 28–day cycle). The district court awarded straight time compensation at the plaintiffs' regular hourly rates (rather than the overtime rate sought by plaintiffs) because the FLSA did not require payment of overtime rates for hours below 171 hours per cycle.

The employer in *Lamon* argued that it had no obligation under the FLSA to pay for the hours between 160 and 171 per cycle so long as plaintiffs' total compensation for 171 hours of work satisfied the FLSA's minimum wage. The district court rejected the argument in footnote 1:

> The court notes defendant's extensive briefing of its argument that there is no express requirement under the FLSA that plaintiffs be paid for the hours between 160 and 171 which are statutorily exempt from the normal requirement that these hours are compensable at an overtime rate. However, the court finds defendant's argument to be unreasonable in view of the remedial purpose of FLSA. The court finds the requirement that plaintiffs be paid

compensation at their regular hourly rate to be implicit in the framework of the FLSA. The court further notes that defendant has conceded that if plaintiffs work more than 171 hours, hours worked between 160 and 171 are compensable at plaintiffs' normal hourly rate. The court finds there to be no principled reason for the requirement that plaintiffs work over 171 hours before they are entitled to be paid for time spent working between 160 and 171 hours.

754 F.Supp. at 1521 n. 1. On appeal, the Tenth Circuit expressly adopted this reasoning without further explanation. 972 F.2d at 1155.

The same district judge who decided *Lamon* decided a similar gap time issue in *Schmitt v. Kansas*, 844 F.Supp. 1449 (D.Kan. 1994) (denying defense motion for summary judgment), and *Schmitt v. Kansas*, 864 F.Supp. 1051 (D.Kan.1994) (findings after court trial). The plaintiffs in *Schmitt* were a group of state police troopers who worked on a 28–day cycle for purposes of the FLSA. The troopers were scheduled to work 160 hours during each cycle, but they were paid the same compensation whether they worked 160 hours or up to 171 hours per cycle. The troopers received overtime pay for hours above 171 per cycle. The troopers in *Schmitt* sued for straight time compensation for the gap time hours between 160 and 171 hours per cycle. The district court interpreted the Tenth Circuit's decision in *Lamon* as requiring that the issue under the FLSA be decided by examining the terms of the troopers' employment contract with the State of Kansas. See 864 F.Supp. at 1063–64. After working through complex details of the state's personnel system, the court ultimately concluded that the troopers' employment agreement provided a fixed monthly salary despite varying hours of work, supplemented with overtime pay as required by the FLSA. The court therefore held that the troopers were in fact being compensated for all non-overtime hours and that they were not entitled to additional pay for the gap time. *Id.* at 1069.

employee did not work overtime hours. The Fourth Circuit directed entry of judgment in fa-

vor of the employer on both types of claims. See 95 F.3d at 1279–80.

This court essentially agrees with the Fourth Circuit's analysis of the gap time issue in *Monahan,* including that court's analysis of the Department of Labor regulations and the more general policy arguments under the FLSA. The FLSA does not provide a federal remedy for any and all breaches of payment obligations under employment contracts. The core rights and obligations the FLSA creates are the minimum wage levels and entitlement to overtime pay for work above specified maximum hours set forth in 29 U.S.C. §§ 206 and 207. The general "remedial purpose" of the FLSA does not support its expansion to a mechanism for employees to enforce a broad range of employers' contractual obligations beyond the minimum wage and overtime requirements enacted by Congress. There is no doubt that the plaintiffs in this case have been the victims of FLSA violations of their right to overtime pay for hours worked above the 40 hour threshold that applies to most employees under the FLSA. The court will award relief for those violations. But with or without that relief, these plaintiffs do not claim that their compensation ever fell below the minimum wage required by the FLSA. In the absence of genuine overtime hours above the statutory threshold, the FLSA does not prohibit the terms of these plaintiffs' employment contracts, which called for payment of a fixed level of compensation whether the plaintiffs worked 35 hours a week, 40 hours a week, or some amount in between, with an ability to take compensatory time for hours in excess of 35 hours a week. Because these plaintiffs' contracts were not breached, this court need not decide whether it accepts the analysis in *Schmitt.* Even under that approach, and certainly under the *Monahan* approach, plaintiffs in this case are not entitled to additional compensation under the FLSA for "gap time" hours.

### C. Years Available for Overtime Claims

On the last business day before trial in this action, Madison County moved for leave to amend its answer to assert, for the first time, a statute of limitations defense under the FLSA. Under the FLSA, the stat-

ute of limitations is two years in most cases, but three years for willful violations. See 29 U.S.C. § 255(a). The statute of limitations remains an affirmative defense that must be pleaded in an answer, and a defendant can waive the defense by failing to plead it. See Fed.R.Civ.P. 8(c); *Mumbower v. Callicott,* 526 F.2d 1183, 1187 n. 5 (8th Cir.1975) (FLSA statute of limitations waived by failure to plead); *Hodgson v. Humphries,* 454 F.2d 1279, 1283–84 (10th Cir.1972) (same); *Professional Firefighters Ass'n v. City of Clayton,* 759 F.Supp. 1408, 1414–15 (E.D.Mo. 1991) (same); *Brock v. Wackenhut Corp.,* 662 F.Supp. 1482, 1487 (S.D.N.Y.1987) (same); see generally *Venters v. City of Delphi,* 123 F.3d 956, 967–68 (7th Cir.1997) (defendant waived statute of limitations by raising it first in summary judgment reply brief a year after case was filed: "Once the availability of an affirmative defense is reasonably apparent, the defendant must alert the parties and the court to his intent to pursue that defense. 'A defendant should not be permitted to "lie behind a log" and ambush a plaintiff with an unexpected defense.' "); *Johnson v. Sullivan,* 922 F.2d 346, 355 (7th Cir.1990) (en banc) (defense waived statute of limitations defense by failing to plead it); *Tamari v. Bache & Co.,* 838 F.2d 904, 908–09 (7th Cir.1988) (district court did not abuse discretion in denying amendment to complaint to add new theory six weeks before scheduled trial); *Orzel v. City of Wauwatosa Fire Dept.,* 697 F.2d 743, 747 n. 8 (7th Cir.1983) (defendant waived statute of limitations defense by failing to plead it); *Wagner v. Fawcett Publications,* 307 F.2d 409, 412 (7th Cir.1962) (district court erred by raising statute of limitations *sua sponte;* if defendant did not raise the defense, it was waived).

At trial the court denied defendant's last-minute effort to add a new defense to the case. As explained at trial, the court found: (a) that defendant had offered no good cause for its failure to raise the defense earlier, for its counsel had long been aware of the potential defense; (b) that the late amendment would unfairly prejudice plaintiffs, who had, by the time of trial, invested time and resources to pursue claims that would have been foreclosed if the statute of limitations

had been raised in a timely manner; and (c) that the interests of justice did not weigh in favor of allowing such a belated effort to block claims that were otherwise well-documented and legally valid. The court adheres to that ruling for the reasons stated. Accord, *e.g., Venters v. City of Delphi*, 123 F.3d at 967–68; *Tamari v. Bache & Co.*, 838 F.2d at 908–09.

The county has also argued that plaintiffs' discovery responses should put some limits on the years for which they can claim overtime. The county never served a document request on plaintiffs that would have resulted in discovery of plaintiffs' time records that go back to 1985. The county also never served an interrogatory asking plaintiffs to specify the amounts they were claiming, even though the complaint was not specific as to time. Also, plaintiffs made available their proposed trial exhibits for defense counsel to inspect. Plaintiffs' counsel was not required to give defense counsel a guided tour that would have highlighted the records for earlier years.

 Nevertheless, discovery responses will bind plaintiffs in several respects. First, pursuant to the case management plan approved by the court, plaintiffs served a statement of their special damages. That statement contained total amounts, not broken down by years, and the totals included plaintiffs' claims for breach of contract and gap time. The court will hold each plaintiff to the total amount each claimed and will not award any plaintiff more in total damages than that plaintiff claimed in the statement of special damages. Second, the county took depositions of plaintiffs Surratt and Braddock. Both testified that their claims went back to 1991.[6] Surratt has accordingly limited his claim to 1991 forward. Braddock seeks some relief for the years 1988–90. Be-

fore trial she did not attempt to correct her deposition answer and did not otherwise give the county more explicit notice that she sought any damages for those years. Accordingly, both Surratt and Braddock will be limited to overtime pay for hours worked in 1991 and forward. Plaintiffs McCord and Martin were not deposed and did not limit their claims. Both can assert claims going back to April 15, 1986, the date specified in the 1985 amendments to the FLSA for state, county, and local government employees. The hours and dollars set forth above at page 1103 reflect these limitations.

**D. Actual Damages and Liquidated Damages**

 Under the FLSA, plaintiffs are entitled to the actual amounts of time-and-a-half overtime wages that they should have been paid. Those amounts of actual damages are set forth above at page 1103. Plaintiffs are also entitled under the FLSA to liquidated damages equal in amount to the unpaid overtime compensation. 29 U.S.C. § 216(b); *Bankston v. Illinois*, 60 F.3d 1249, 1254 (7th Cir.1995). An employer may avoid liquidated damages, however, by showing that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA. 29 U.S.C. § 260; *Bankston v. Illinois*, 60 F.3d at 1254. The evidence here shows that the Madison County Council received advice from its attorney in 1995 that these plaintiffs were in fact entitled to overtime compensation. The County Council took no action to comply with the advice of that attorney. That is ample ground for concluding that the county has not met its burden of showing that its violations of the FLSA were reasonable and in good faith.[7]

---

6. These deposition answers gave the defendant a clear signal well before trial that plaintiffs sought relief for at least some periods outside the scope of even the three-year statute of limitations for willful violations. The answers did not prompt defendant to seek leave to plead the statute of limitations at that time.

7. The parties tendered exhibits to the court showing additional investigation and advice that

could have been used by both sides on this issue. See Pl.Ex. 20; Def. Ex. K. The court sustained objections to these exhibits, and the county did not argue that Def. Ex. K should be considered on the issue of good faith. Accordingly, the court has not considered these exhibits in determining that the county failed to meet its burden of showing that it acted reasonably and in good faith.

Using the total figures from page 1103, above, the plaintiffs are entitled to total FLSA damages (unpaid overtime plus equal amounts of liquidated damages) in the following amounts:

| | |
|---|---|
| Karen McCord | $18,161.86 |
| Mary Martin | $10,592.00 |
| David Surratt | $ 2,967.28 |
| Helen Braddock | $ 8,392.20 |

### III. Indiana Wage Claim Statute

Plaintiffs seek additional relief under the Indiana Wage Claim Statute, Ind. Code § 22–2–5–1(a), which requires an employer to pay each employee at least semimonthly or biweekly, "if requested, the amount due the employee." An employer who violates this requirement is liable for the amount due, plus up to twice that amount in liquidated damages. Ind.Code § 22–2–5–2. The statute applies to public employers like Madison County. See *Hendershot v. Carey*, 616 N.E.2d 412 (Ind.App.1993) (holding city liable for failure to pay employees). The statute has an exception, however: "Salaried employees who are eligible for overtime compensation under the Fair Labor Standards Act (29 U.S.C. § 201 et seq.) are specifically exempted from section 1 of this chapter." Ind.Code § 22–2–5–1.1. Plaintiffs contend that Madison County violated the Indiana statute by failing to pay them overtime when due. Madison County contends that the plaintiffs are salaried employees who are exempt from the statute. The court agrees with defendant that the plaintiffs are salaried employees who are eligible for overtime compensation, and therefore are not entitled to additional relief under the Indiana statute.

The Indiana Court of Appeals addressed this issue in a similar context in *Hendershot v. Carey*, holding that the plaintiff class of city employees should be divided into two subclasses. One subclass consisted of hourly workers who were entitled to prevail under the Indiana statute, and the other subclass consisted of salaried employees who were not entitled to prevail. 616 N.E.2d at 421–22. The court's opinion lays out in detail how the line should be drawn between hourly and salaried employees. The court described that inquiry as "fact-sensitive" and calling for "evaluation of the totality of circumstances including, but not limited to, employment contract provisions, method and time of payment, relation of time worked to pay received, applicable regulations and ordinances, and express classification." *Id.* at 418. In *Hendershot* the city payroll designated each employee as either "H" for hourly or "S" for salaried, although those express classifications were not always consistent. All employees were required either to fill out time cards or to punch time clocks. The court held that the fact that all employees were accountable for their time did not make them all hourly employees. *Id.* at 420.

A key factor in determining whether an employee is hourly or salaried is the correlation between hours and pay, and *Hendershot* provides guidance on that issue. Plaintiff Hendershot testified that he was salaried. He was not paid overtime if he worked more than 40 hour a week. If he worked less than that, he recorded his time as if he had worked 40 hours a week. That arrangement clearly showed he was salaried. *Id.* at 420. Plaintiff Neal was required to punch a time clock and her supervisor filled out time cards that accounted for vacation, sick days, and the like. Her paychecks showed that she was paid the same amount for every pay period. The court said it was "left to speculate whether Neal would have been paid for absence not covered by the benefit package." *Id.* at 420–21. The Court of Appeals upheld the conclusion that Neal was salaried because some evidence supported that view.

In this case the Madison County Council set plaintiffs' compensation on an annual basis. The plaintiffs' employment contracts did not call for additional pay for hours worked in excess of the scheduled 35 hours a week. The strongest evidence for plaintiffs is the evidence tending to show that if a plaintiff missed a day of work, he or she had to account for that absence with accumulated vacation, sick leave, or personal days, or have his or her biweekly paycheck reduced. There is no evidence, however, that any of the plaintiffs ever had a paycheck actually reduced for such reasons. In addition, the relatively loose and relaxed approach to compensatory time during the years in question produced practical consequences that are in-

distinguishable from being on a salary payable regardless of the amount of actual time spent on the job in a given pay period. The totality of circumstances therefore persuades the court that these plaintiffs have been salaried employees who are exempt from the Indiana Wage Claim Statute under Ind.Code § 22–2–5–1.1. Madison County prevails on plaintiffs' claims for relief under the Indiana statute.

### Conclusion

The court will enter judgment in favor of plaintiffs on their overtime claims for hours worked in excess of 40 hours a week, with liquidated damages, in the following amounts: Karen McCord—$ 18,161.86; Mary Martin—$ 10,592.00; David Surratt—$ 2,967.28; and Helen Braddock—$ 8,392.20. Plaintiffs are also entitled to an award of a reasonable attorneys' fee and costs. See 29 U.S.C. § 216(b); *Bankston v. Illinois*, 60 F.3d at 1255. Pursuant to Fed.R.Civ.P. 54(d)(2), plaintiffs shall submit a fee and cost petition within 21 days of the date of this judgment, and defendant shall have 21 days to respond. If either side seeks an evidentiary hearing on the fee petition, it should so indicate in its papers.